[No. 10,396.]
## THE PEOPLE *v.* JOHN T. CURLEE.

EVIDENCE THAT WITNESS WAS AN ACCOMPLICE.—Under the evidence given at the trial it was error in the Court to charge the jury that "there is no evidence in this case tending to show that the witness Brown was an accomplice in the commission of the offense with which the defendant is charged. [The evidence was to the effect that More had been murdered in accordance with a conspiracy; that prior to the murder the witness Brown had conversed freely with the conspirators about the details of the proposed murder, learning all about it; that they asked and expected him to participate, but he did not, though he accepted buckshot from them to be used on the occasion, and did not discourage the killing, nor give warning to More.— REPORTER.]

APPEAL from the District Court of the First Judicial District, Ventura County.

The defendant was tried as one of the conspirators, with F. A. Sprague and others, in the murder of T. W. More. He was convicted, and a new trial having been denied, he appealed. The other facts are stated in the opinion.

*Creed Haymond* and *J. M. Brooks*, for Appellant.

*Attorney-General Hamilton, L. C. Granger, W. T. Williams, Frank Ganahl, J. G. Howard,* and *N. Blackstock,* for Respondents.

By the COURT:

At the trial, one Austin Brown, a witness for the prosecution, gave evidence tending strongly to inculpate the defendant as

one of the parties who committed the murder of which he is accused by the indictment. He testifies that a very short time prior to the murder of More he had a conversation with Sprague, in which the latter said : "'What are we going to do with More? He has threatened to take the water away and turn his sheep loose on us, to eat us up.' I told him I didn't know ; I had nothing to do with Tom More anyway. I said : 'Some time ago you made the remark, "He ought to be killed, and would have been long ago if anybody had been detailed to kill him," and perhaps some of these squatters may detail you to kill him.' He says, 'That is what I want to see you about. There is a party organized to kill More, and I have come to see if you will go with us.' I asked who the party was. He says, John Curlee, Jesse Jones, Pete Ewanson, Henry Cook, Mr. Churchill, and himself. I told him I didn't care about being mixed up in the killing of a man. 'Oh,' he says, 'I will do the killing myself. All I want of you is to stand guard.' I asked him where he wanted a guard, and he said, 'We want a guard at the shop, at the granary, and at the house, to keep all at bay, should there be any there from the sheep camp.' I said, 'They will see you and know you.' 'Oh, no,' he says, 'we have a disguise fixed. Take a gunny-sack, and cut some holes in it for your head and arms, and throw a cloth over your head, and they won't know you.' Says I, 'How is this thing to be done ?' 'We have it all planned and fixed,' he says. 'We have a ball saturated with turpentine, and when it is set on fire we throw it into the barn, and when the barn is on fire that will draw him out, and I will shoot him.' I says : 'They will see you and know you.' 'No,' he says, 'we have a disguise fixed.' Then I says : 'Where do you meet ? at More's house ?' 'No,' he says, 'we have a place of meeting near a little slough, between Lawton's house and mine, and the time of meeting is about ten o'clock, and as you approach the slough you give a low whistle, and it will be answered, and some one will come out and show you where we are.' I told him I could not promise to be there. My wife did not like to stay alone nights, and if I was away she wanted to know where I was and what I was doing. He says : 'If it is possible for you to be

there, we want you there.' I told him I could not promise, and he went away."

He then testified to a conversation he had with Churchill, another of the alleged conspirators, on the Thursday preceding the murder, in which Churchill said: "'To-morrow night is the night fixed to kill Tom More, and we want you to be there. The hour is ten o'clock. The place of meeting is the same as Sprague told you, near a little slough, and the signal is the same—a low whistle, and you give a low whistle, and it will be answered, and some one will come out and conduct you in to where we are. There are parties in it now there is no back-out to. This road is being watched, and the road above, near Lawton's.' He then asked me if I had a shotgun. I told him I had. 'Have you any ammunition?' I told him I had not; and he then handed me five buckshot. He said that would be enough, 'and the powder and caps will be furnished you at the rendezvous.' I told him I could not promise to be there; that my wife did n't want to be alone nights, and I could not leave her; something to that effect; if I was away she wanted to know where I was and all about it." On cross-examination he testified: "I never promised Sprague nor Churchill to help them in that conspiracy." He also testified that he had never had any previous conversation with Churchill "about, anything of importance, and on that day had called on him to deliver a message to him from Thompkins about some hogs."

It will be observed the witness testified that he had a previous conversation with Sprague; and in the last conversation he reminded him that in the prior conversation he [Sprague] had remarked: "He [More] ought to be killed, and would have been long ago if anybody had been detailed to kill him," and thereupon the witness suggested, "Perhaps some of these squatters may detail you to kill him."

There is nothing in his evidence tending to show that in the conversations with Sprague and Churchill he made any effort, either by word or deed, to discourage the conspiracy or to prevent its accomplishment. It does not appear that he gave any warning to More to awaken his suspicions as to the danger impending over him, nor does he assign any reason for having

omitted to do so. The principal reason assigned to Sprague and Churchill for refusing to promise his aid in the conspiracy was, that his wife did not like to be left alone at night, and when he was away she always wanted to know where he was and what he was doing. Nor did he positively refuse to be present at the rendezvous. The strongest expression he used was, that he "didn't care about being mixed up in the killing of a man," and that he would not *promise* to be there. Nevertheless he accepted from Churchill, without remonstrance, the buckshot with which to load his gun.

It is not necessary for us to decide whether these circumstances were sufficient to charge him as an accomplice; but if they *tended* to prove his complicity in the crime, it then became a question for the jury whether the proof was sufficient to establish that fact. The jury was to judge of his credibility, considering the circumstances under which he was testifying, and would have been justified in rejecting his statement that he did not promise to be present, if, on the whole evidence, they did not believe it to be true.

We are of the opinion that the evidence, as detailed above, did tend in *some* degree to prove that he was an accomplice, and it was for the jury to determine what weight should be given to it. If the witness had been on trial for the murder, and had testified precisely as he did in this case, it would scarcely have been claimed that there was no evidence whatever tending in any degree to establish his complicity in the crime. It may have been slight and insufficient of itself to establish his guilt beyond a reasonable doubt; but that would have been a question for the jury.

At the trial the Court, of its own motion, charged the jury that "there is no evidence in this case tending to show that the witness Brown was an accomplice in the commission of the offense with which the defendant is charged." This took wholly from the jury the question whether or not he was an accomplice, and the instruction was erroneous, if there was any evidence, however slight, tending to prove his complicity; and, as we have seen, there was evidence tending, in *some* degree at least, to establish that fact. Under sec. 1111 of the Penal Code, the

defendant could not have been convicted on the testimony of an accomplice, unless he was corroborated by other evidence, as therein provided; and the Court should have submitted to the jury, under proper instructions, the question whether or not he was an accomplice. It may have been a question of vital consequence to the defendant, and we cannot say that he was not prejudiced by the ruling of the Court.

Judgment reversed, and cause remanded for a new trial.

WALLACE, C. J., did not express an opinion in this case.