### Tom Johnson v. The State.

#### No. 401. Decided February 2, 1910.

**1.—Burglary—Accomplice Testimony—Charge of Court.**

Where, upon trial for burglary the State's testimony for a conviction rested wholly with one witness who claimed to have purchased the alleged stolen property under conditions that he must have known that the same was stolen, it was reversible error to refuse requested charges submitting the issue of accomplice testimony, and in the event the jury so found the witness to be an accomplice, requiring the necessary corroboration.

**2.—Same—Definition of Accomplice—Particeps Criminis.**

It has been quite uniformly held that the word accomplice when applied to evidence, includes not only the principal offenders, but accomplices, accessories and all those who are participes criminis. It has a broader signification when applied to evidence than it has in article 79, Penal Code, which defines an accomplice in crime.

Appeal from the District Court of Bexar. Tried below before the Hon. Edward Dwyer.

Appeal from a conviction of burglary; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—Appellant was charged in the District Court of Bexar County by indictment returned therein on October 8, 1909, with the offense of burglary in breaking and entering a certain house controlled by one J. A. Potts with the intent to commit theft. At a trial had in said court on the 19th day of October, of the same year, appellant was convicted of the crime charged, and his punishment assessed at confinement in the penitentiary for three years.

While presented in more than one form, the sole question is as to

whether the facts and evidence in the case presented and raised the issue of one McCormick, the State's witness, being an accomplice, and whether, in the light of all the testimony, the court was required to give a charge in respect to accomplice testimony. There was no other witness connecting appellant with the possession of the property, and without the testimony of this witness there was practically no evidence against appellant.

We desire to commend the manner of the preparation of the record and statement of facts in the case.

In the statement of facts it is recited that it was proved beyond doubt that on or about the time alleged in the indictment that the house in question was broken into in the night-time and a set of single harness was taken therefrom; that the house was entered by force by the party who took the harness; that the harness, about two months after being stolen, was found in the possession of Sam Johnson, and that Sam Johnson purchased the harness from one Henry McCormick. The statement of facts also recites that the facts show beyond doubt that the entry into said house and the taking of the harness constitute both burglary and theft. It is also recited that there was no testimony of any kind connecting or tending to connect the defendant, Tom Johnson, with the burglary and theft except the testimony of the witness, Henry McCormick. The statement then sets out at some length the testimony of this witness. He states that on or about the 5th day of June, 1909, he bought a set of harness from appellant, for which he paid two dollars, which he later sold to the witness, Sam Johnson. In reply to the inquiry as to how he happened to buy the harness, he stated appellant drove up in a wagon and asked him if he wanted to buy a set of harness, to which he replied that he did "if it was his and was all right." That he then asked him what he wanted for the harness, and he said two dollars, which he gave him. On cross-examination he stated that he was employed by the Woodward Carriage Company, and that his duties were to keep automobiles, harness, etc., and do pretty much everything, like putting up buggies, washing buggies, automobiles and harness, and that he sold harness if anyone came in the store and wanted them, and that he was acquainted with the value of harness, and that the harness in question was worth $25 or $30. Being asked the question: "At the time you bought this harness from this negro for two dollars you knew it was a twenty-five or thirty dollar set of harness?" he replied, "No, sir, I didn't." Being asked, "When did you find out it was a twenty-five or thirty dollar set of harness?" he replied, "Somebody said the man paid forty dollars for it; I didn't know what it was worth." Being then pressed with the question: "What does Woodward sell such a set of harness for?" he answered, "Twenty-five or thirty dollars, thirty-five sometimes, depends upon what kind of a harness it was." He makes also the following more detailed statement of his conversation with appellant at the time he bought the harness: "Defendant showed the harness to

me. I did not ask him where he got the harness. I only asked him if it was his. I did not ask him where he bought it, nor did I ask him why he wanted to sell it. I asked him how much he wanted for it, and he said two dollars." He states further: "No, sir, I did not know the harness was stolen when they were brought to me. I didn't know where the man got them. I didn't think they were stolen. I thought they were his harness. I didn't know where he got them, and I didn't ask." He also states that when he came to sell the harness that he took them to Johnson's house in a wagon. On redirect examination the witness stated he had lived in San Antonio about twenty-five years, and for some seventeen or eighteen years of that time had been employed by the Woodward Carriage Company, and that appellant brought the harness over there in a sack to him, and sold them to him. He also states that when he bought the harness he took them out of the buggy and took them right down into a cellar; that he paid appellant for them before he took them to the cellar; that he did not open the sack out on the street.

In this condition of the testimony appellant requested the court to give the following in charge to the jury:

"A conviction can not be had upon the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the offense committed and the corroboration is not sufficient if it merely shows the commission of the offense.

"Now if you find from the evidence that Henry McCormick at the time he bought the harness of the defendant, if he did so buy it, then believed the same had been stolen then the law makes said McCormick an accomplice and you can not find the defendant guilty upon the testimony of Henry McCormick unless you find that his testimony has been corroborated by other evidence which tends to connect the defendant with the commission of the offense.

"And if you find that Hy. McCormick was an accomplice and that his testimony is the only testimony which connects the defendant with the offense charged against him, then you will find the defendant not guilty."

We think, in substance, this charge should have been given. It has been quite uniformly held that the word "accomplice" when applied to evidence, includes not only the principal offenders, but accomplices, accessories and all those who are particeps criminis. It has a broader signification when applied to evidence than it has in article 79 of the Penal Code, which defines an accomplice in crime. It means a person who either as a principal, accomplice or accessory is connected with the crime by an unlawful act or omission on his part transpiring either before, at the time of, or after the commission of the offense, and whether or not he was present and participated in the crime. Phillips v. State, 17 Texas Crim. App., 169. We have found no case, in terms, directly supporting appellant's contention, and yet on principle it seems to us clear that there was evidence before the jury from which

in the light of all the facts they would have been justified in believing that the witness McCormick was an accomplice, and from the manner in which the property was offered for sale, in connection with the shocking disproportion between the real value of same and the amount asked therefor, might well have reached the conclusion that the property must have been stolen, and as to suggest that no man in his senses, honestly owing the property, would have parted with it for so inconsiderable a sum and that his possession of same under these circumstances was not a fair and honest possession, and would well have justified the jury in believing that, knowing it had been stolen, he reaped the fruits of the theft or connived at it by being the receiver of stolen property. Whether the jury would have so believed or not, we are not called on to say. That the facts suggested such a conclusion, we have no sort of doubt. In the case of Walker v. State, 37 S. W. Rep., 423, it was held that one who accepts meat which he knows is from a cow stolen by the giver is an accomplice in the theft, within the rule requiring corroboration of an accomplice's testimony. We make a liberal quotation from that case, as follows: "The only question that requires to be considered by us is the failure of the court to charge on accomplice testimony. The court failed to charge on this subject, and refused to give a charge asked by the appellant covering the same ground. The statement of facts shows that Felix Parker was a material witness for the State in this case. By him the State proved that he saw the parties—Walker (defendant in this case) and his codefendant, Mitchell—as they were driving the cow in question, alleged to have been stolen from the pasture of Griffin, towards the home of said Mitchell, the cow being yoked or necked to a steer. This witness also testified that he was at Mitchell's house the next day, and that he saw a quantity of fresh beef there, and said Mitchell told him it was a part of Griffin's cow. This witness testified on cross-examination that he got some of the beef from Mitchell, and ate some of it, and knew at the time it was stolen meat; that said Mitchell told him it was a part of Griffin's cow; that he did not say anything about this; and that he saw Mr. Griffin frequently, and did not tell him about it. The question is, did this testimony tend to connect this witness with the crime as an accessory? The rule being that any person who, either as principal, accomplice, or accessory, is connected with a crime by unlawful act or omission on his part, transpiring either before, at the time of, or after the commission of the offense, and whether or not he was present and participated in the crime, is an accomplice, whose testimony must be corroborated before a conviction can be had. In this case there is no pretense that the witness Parker participated in the original taking, but it is not questioned that he received a part of the meat of the cow in question after she had been killed, knowing at the time that the same was stolen. This would constitute him a receiver of a part of the stolen property, and would place him towards the case (where the prosecution was for the theft of the animal in

question) in the attitude of an accomplice. It is true, there was abundant testimony, outside of the evidence of this accomplice, tending to show appellant guilty of the offense charged, but this fact did not relieve the court of its duty to charge the jury on accomplice's testimony. See Hines v. State, 27 Texas Crim. App., 104, 10 S. W. Rep., 448; O'Connor v. State, 28 Texas Crim. App., 288, 13 S. W. Rep., 14; Massey v. State, 29 Texas Crim. App., 159, 15 S. W. Rep., 601."

We attach, in this case, no controlling importance to the fact that the witness McCormick denied knowing that the property was stolen. If the facts considered altogether were such as of necessity to carry notice that the property had been stolen, he would in law, as in fact, be assumed to have that knowledge which every sane mind would gather from all the environments and circumstances of the transaction. It is idle sometimes quite frequently to say that we do not know a fact of which the evidence is so plain that a wayfaring man, though a fool, can not err in respect thereto. We think the evidence raised the issue that under the law that McCormick was an accomplice, and inasmuch as there was no evidence besides his connecting appellant with the crime charged, it was vitally important to him that the jury should have been instructed touching this matter.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*