## JEP NEWTON V. THE STATE.

No. 6411. Decided November 2, 1921.

Rehearing granted June 29, 1923.

1.—Selling Intoxicating Liquor—Accomplice—Purchaser.

Where, upon trial of selling intoxicating liquor under the former law which made the purchaser an accomplice, the court refused to submit a charge on accomplice testimony of a State's witness who, while he took no part in the sale, other than his connection with the purchase, but his testimony was essential to conviction, same was reversible error.

2.—Same—Rule Stated—Accomplice.

The word accomplice as used in Article 801 P. C., is not used in the technical sense, but includes those who are criminally connected with the crime on trial. Following Irvin v. State, 1 Texas Crim. App., 303.

Appeal from the District Court of Kaufman. Tried below before the Honorable Joel R. Bond.

Appeal from a conviction of selling intoxicating liquor; penalty, one year imprisonment in the penitentiary.

The opinion states the case.

*Crisp & Cooley* and *Wynne & Wynne* for appellant.

*R. G. Storey,* Assistant Attorney General, for the State.

LATTIMORE, Judge.—Appellant was convicted in the District Court of Kaufman County of selling liquor in violation of the Dean law, and his punishment fixed at one year in the penitentiary.

In January, 1921, Jep Newton sold to S. T. Scott in the latter's store in Forney, Texas, a jar of whisky. Scott was in the furniture business. He had a clerk by the name of Clarkson who was in the store at the time of the transaction. Scott and Clarkson were the State witnesses. The court told the jury that Scott was an accomplice, and appellant endeavored to show by the proof, and to have the jury instructed that Clarkson was also such accomplice. Scott testified that he bought and paid for the said whisky in question, and that Clarkson had no interest in same, but that each of them sometimes bought liquor, and that when either of them did so, the liquor was kept in the store and each had free access to it and helped himself. Apparently in an effort to inferentially show Clarkson to be an accomplice in the instant transaction, many questions were asked both men relative to past occurrences of a somewhat similar nature, the idea seeming to be that if a custom could be shown of each permitting the other the freedom of his liquor, there would be established such relation toward the instant transaction as would make Clarkson an accomplice. The bills of exception are quite lengthy, each setting out several questions, it being presumed by us that the exception mentioned therein relates to the last of said questions so set out.

By bill No. 1 complaint is made that the court refused to allow answer to the question to Scott: "What were your and Clarkson's dealings with reference to whisky when you bought it? Where did you put it?" The court's qualification shows that Scott said: "Any whisky that Clarkson and I got was put there in the back end of the store. There was no understanding between us that each would drink the other's whisky when we put it there."

Bill No. 2 sets out several questions, and then relates that appellant asked Scott, "Isn't it a fact that you and Mr. Clarkson on this occasion and many other occasions before this, and from various parties, had bought whisky and took it there to the store for each of you to drink?" to which the court sustained objection except to the instant transaction.

Bill No. 3 shows that Scott was asked when he bought whisky if he put it in the back end of the store, to which he answered yes. He was asked if Clarkson put the whisky that he bought in the back end of the store, to which objection was made, and he was asked: "Any whisky you and Clarkson got, where did you put it, and answered that they put it in the store. He was asked if they put any in the back end of the store and he said yes. The following question was then asked, to which objection was sustained: "Isn't it a fact that on this occasion and many other occasions before this, and from various parties, you bought whisky and took it in the store there for each of you to drink?" The court sustained the objection except as to the instant transaction.

Bill No. 4 shows that the following took place:

"Q. Didn't you and Mr. Clarkson have an understanding and each know that if the other bought whisky and put it back there, you could each go and drink it, and did do it?

A. I didn't object to him drinking it.

Then he testified: No, sir, he did not object to me drinking his; I knew what he was doing—that he was drinking my whisky, and was asked:

Q. Didn't you buy this whisky knowing and understanding that if Mr. Clarkson wanted the whisky, he would go and drink it?

A. Yes, I knew if he wanted it he would go and get it."

The following question was then asked:

"Hadn't you and Mr. Clarkson, over a period of some months, been purchasing liquor, taking it into the store and there consuming it together, and drinking the whisky, and wasn't that your manner of handling the whisky on this occasion and all other occasions?

Mr. Young: Objected.

The Court: Sustained.

Q. Isn't it a fact that it was your Mr. Clarkson's custom and arrangement, whether or not you had an understanding, wasn't it your custom and arrangement that you would each buy whiskey and put it in there in the store and each drink it when you wanted to?"

Bill No. 5 shows that the witness Clarkson was asked: "Isn't it true you knew that when Mr. Scott bought this whisky, he was buying it for both of you to drink if you wanted it?" This bill of exceptions is qualified by the statement that the witness stated: "At the time Mr. Scott bought the whisky I thought he would put it back there in the back of the store so he and I both could drink it

when we got ready—I didn't think he would leave it up there in front. I knew I could drink the whisky when I happened to want any of it."

Bill No. 6 shows the following:

"Wasn't it the arrangement and custom that you and Mr. Scott had on this purchase, and on purchases before that, and since, that when you bought whisky you put it back in the store and you all drank it, and when he bought whisky, he put it back in the store and you all drank it?"

Bill No. 7 shows that the witness answered the question, and it is not shown that the answer was stricken out.

Bill No. 8 shows that the following took place while the witness Clarkson was on the stand. On cross-examination the witness stated:

"Q. Where were you when Scott bought this whiskey?

A. I was in the store, back in the back of the store some place.

Q. What were you doing back there? Were you watching to see that nobody came in to catch them?

A. No, sir, I wasn't."

Appellant then asked him: "Mr. Clarkson, weren't you watching, as you had been doing, so if anybody came in you could tell them?" to which objection was sustained except so far as relates to the instant transaction.

We have stated the matter of each bill of exceptions. It appears that what was sought was some evidence of a custom or habit or understanding between Scott and Clarkson by which the question of an accomplice could be raised as to Clarkson. Both Scott and Clarkson testified fully that each occasionally bought whisky and that when it was purchased it was kept in the store and was free to the other. That there was no understanding that each would drink the other's whisky, but if one wanted it and the other had it, he would go and get it. Scott said Clarkson did not know he was going to get the liquor in the instant transaction, but that he knew when he bought same if Clarkson wanted it he would come, and get it. There was a direct denial by both men of any contribution by one to the other, or any interest by one in the liquor bought by the other. There is nothing in any of the answers to the matters contained in the bills of exception which seems to us to raise the question of accomplice. Each man bought and paid for his own liquor, which fact is not called in question by any of said bills. Each man placed his own liquor in the store with full knowledge of the fact that the other could and would use same at his pleasure, but a complete admission of this fact does not bring Clarkson within the rule of accomplice testimony, when Scott bought, or vice versa. That both agreed that when either bought it should be as secretly as possible, seems not to bring Clarkson in any definition of accomplices. That it had been and was a custom and agreement on the part of both men that

when one or the other bought liquor he should put it in the back of the store where both might drink it when they saw fit, would bring neither in the rule of accomplice witnesses. It is not a violation of law for a man to give another liquor, nor to drink that which another man has purchased. To make Clarkson an accomplice in this case he must have a criminal connection with the act of appellant in selling the liquor in question, and we think nothing in any of said bills would show such connection sufficiently to call for a charge on accomplice testimony if the matters rejected had been admitted. Scott was not being prosecuted for purchasing liquor, and no question of appellant being an accomplice of the purchaser was involved.

The judgment will be affirmed.

*Affirmed.*

ON REHEARING.

June 29, 1923.

MORROW, PRESIDING JUDGE.—When Scott purchased, received and paid for the liquor which he bought from appellant, the witness Clarkson was present. He disclaimed any foreknowledge that the particular transaction took place, but conceded that he had known of others like it and had himself upon occasions purchased liquor from the appellant; that while there was no mutuality between Scott and himself in the matter of either act or interest in the present transaction or any other, it was known to each of them that they were at liberty to drink the liquor purchased. There was sufficient evidence, we think, to support the inference by the jury that while there was no express agreement to that effect, there was a mutual understanding that any liquor purchased by either Scott or Clarkson, the other had the privilege of making use of it.

The word "accomplice" as used in Article 801 of the Penal Code, is not used in the technical sense but includes those who are criminally connected with the crime on trial. Irvin v. State, 1 Texas Crim. App. 303; O'Connor v. State, 28 Texas Crim. App. 288; and other cases collated in Branch's Ann. Texas Penal Code, Sec. 702. While the mere presence of Clarkson at the commission of the offense of purchasing the intoxicating liquor by Scott would not so connect him with the crime as to make him an accomplice witness (O'Connor v. State, supra.), he obviously knew the unlawful intent of Scott in purchasing the liquor and was present at the time. If, by his acts he aided Scott or by his words encouraged him to commit the act, or if he in advance agreed to the purchase of the liquor by Scott and was present when it was done, he comes within the definition of an accomplice witness, that is, he is criminally connected with the offense committed. Penal Code, Articles 75 and 78. At the date of the offense the purchase of intoxicating liquors, knowing that it

was unlawfully sold, was a felony. The statute, however, has since been changed.

If the relations between Scott and Clarkson were such· that the jury might have inferred that he in advance agreed to the purchase of the particular whisky in question, or that by his acts or words he encouraged Scott to purchase it, he might have been an accomplice witness. From such evidence, as was introduced of the custom by which one of these parties was´at liberty to enjoy the fruits of the crime committed in the purchase of whisky by the other, consent of the particular transaction, we think, might have been inferred from the relationships and previous conduct with reference to the purchase and use of liquor by appellant and Clarkson. The mere disclaiming in their testimony of any mutuality of understanding or agreement was not conclusive. Their attitude toward one another was the subject of proof by circumstantial evidence. Scott was obviously an accomplice, he being directly connected with the crime of selling liquor in committing the crime of purchasing it. Franklin v. State, 89 Texas Crim. Rep., 252. It may be conceded that Clarkson was not an accomplice to the sale, but as we understand the law as applied to an accomplice witness, this is not essential. His status was analogous to the appellant in the case of Walker v. State, 37 S. W. Rep. 423. Walker was charged with the theft of a cow. Parker, a witness for the State, on cross-examination, admitted that he had eaten of some of the beef resulting from the slaughter of the cow, knowing at the time that it was stolen meat, and he did not inform Griffin, the owner of the cow, of that fact. It was held that Parker was an accomplice. In Johnson's case, 58 Texas Crim. Rep. 244, the offense was burglary. The witness McCormick purchased some of the stolen property under circumstances which would justify the conclusion that it was not honestly obtained by Johnson. The court held that a charge on accomplice testimony was required, saying:

"We have found no case, in terms, directly supporting appellant's contention, and yet on principle, it seems to us clear that there was evidence before the jury from which, in the light of all the facts, they would have been justified in believing that the witness McCormick was an accomplice, and from the manner in which the property was offered for sale, in connection with the shocking disproportion between the real value of same and the amount asked therefor, · might well have reached the conclusion that the property must have been stolen, and to suggest that no man in his senses, honestly owning the property, would have parted with it for so inconsiderable a sum and that his possession of same under these circumstances was not a fair and honest possession, and would well have justified the jury in believing that, knowing it had been stolen, he reaped the fruits of the theft or connived at it by being the receiver of stolen

property. Whether the jury would have so believed or not, we are not called on to say. That the facts suggested such a conclusion, we have no sort of doubt.''

''We attach, in this case, no controlling importance to the fact that the witness McCormick denied knowing that the property was stolen. If the facts considered altogether were such as of necessity to carry notice that the property had been stolen, he would in law, as in fact, be assumed to have that knowledge which every sane mind would gather from all the environments and circumstances of the transaction. It is idle, sometimes quite frequently, to say that we do not know a fact of which the evidence is so plain that a wayfaring man, though a fool, cannot err in respect thereto.''

Judge Ramsey, in writing the opinion, and commenting upon the Walker case, said:

''In this case there is no pretense that the witness Parker participated in the original taking, but it is not questioned that he received a part of the meat of the cow in question after she had been killed, knowing at the time that the same was stolen. This would constitute him a receiver of a part of the stolen property, and would place him towards the case (where the prosecution was for the theft of the animal in question) in the attitude of an accomplice.''

In the instant case, while Clarkson took no part in the sale other than his connection with the purchase, he was not under the evidence so disconnected from the purchase by Scott as to warrant the court in refusing to permit the jury to determine whether he was an accomplice witness. His testimony was essential to conviction, and we think in refusing to instruct the jury upon the law of accomplice testimony with reference to him, the court fell into error which requires a reversal of the judgment.

It is therefore ordered that the rehearing be granted, the affirmance heretofore entered be set aside and the judgment of the trial court be now reversed and the cause remanded.

*Reversed and remanded.*