## McLENDON v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
May 9, 1927.

No. 7296.

1. Criminal law ⚖=507(1)—"Accomplice" is one associated in commission of crime.

"Accomplice" is properly defined as one who is in some way concerned or associated in commission of crime; partaker of guilt; one who aids or assists, or is an accessory.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accomplice.]

2. Criminal law ⚖=780(2)—One instigating plan and furnishing papers held accomplice to offense of defrauding by sending registration papers of dead dog though mails, and refusal of instruction as to accomplice testimony was error (Penal Code, § 215 [Comp. St. § 10385]).

One conceiving way to commit fraud by selling unregistered dog as registered one, and furnishing registration papers of dead dog to defendant, so he could perpetrate such fraud, is accomplice to offense of defrauding by sending such papers through mails, in violation of Penal Code, § 215 (Comp. St. § 10385), and refusal of instruction as to caution with which accomplice testimony should be received was error, since accessory before fact is accomplice, within rules of accomplice testimony.

In Error to the District Court of the United States for the Western District of Missouri; Merrill E. Otis, Judge.

T. E. McLendon was convicted of sending through the mails of the United States letters and the registration certificate of a bird dog which was dead, whereby he defrauded another, and he brings error. Reversed and remanded.

D. B. Puryear, of Memphis, Tenn., and Waldo P. Goff, of St. Joseph, Mo. (T. J. Walsh, of Memphis, Tenn., on the brief), for plaintiff in error.

S. M. Carmean, Asst. U. S. Atty., of Kansas City, Mo. (Roscoe C. Patterson, U. S. Atty., of Kansas City, Mo., on the brief), for the United States.

Before WALTER H. SANBORN and BOOTH, Circuit Judges, and KENNAMER, District Judge.

WALTER H. SANBORN, Circuit Judge. The defendant below was indicted, tried, convicted, and sentenced to five years in the penitentiary for a violation of section 215 of the Penal Code (Comp. St. § 10385), by sending through the mails of the United States to one E. A. Miner letters and the registration certificate of the bird dog Ty Ben's Jake, that was dead, whereby he was alleged to have de-

19 F.(2d)—30

ceived and defrauded Mr. Miner into purchasing from him and paying him $175 for an unregistered dog that the defendant delivered to him, and which Mr. Miner was led to believe was the living registered dog Ty Ben's Jake.

One of the alleged errors in the trial of the case was that the judge declined to instruct the jury as to the testimony of R. C. Smith, a witness for the United States, as the testimony of an accomplice of the defendant. The evidence at the trial conclusively established these facts:

R. C. Smith and the defendant at one time lived in the same vicinity for many years, and had been well acquainted for 12 years before 1922. Each of them owned, bought, and sold bird dogs. Prior to the transaction under consideration, the defendant, who operated dog kennels and bought and sold many dogs, had bought three dogs of R. C. Smith. In 1918 R. C. Smith owned the dog Ty Ben's Jake and the registration certificate of that dog, which was dated November 9, 1918, and certified that the color of the dog was "white, black and ticked," and that R. C. Smith was his owner. That dog died in April, 1919, at the residence of R. C. Smith, his owner. By means of correspondence through the mails of the United States, the defendant in 1922 sold and delivered to Mr. Miner an excellent bird dog whose color was "white, black and ticked," and assigned to Mr. Miner that dog and the certificate of registration of Ty Ben's Jake, the dog that had died in 1919, and Mr. Miner paid him $175 for this dog. R. C. Smith, the owner of that registration certificate, had assigned it to the defendant on April 24, 1922.

The defendant and the witness R. C. Smith contradicted each other in their testimony concerning the other facts in the case, as follows: R. C. Smith testified that he wrote to the defendant early in 1922, and in his letter asked him if he would buy registration papers on dead dogs; that the defendant answered in a letter, which he sent to him by mail, and requested him to send the paper and he would look it over; that thereupon he sent the certificate of registration of Ty Ben's Jake, and the defendant sent back the registration certificate and directed him to sign the printed statement of the sale of that dog on the back of the certificate of registration and keep a check he sent him for $5; that printed statement read, "I have this day sold the dog named on the face of this certificate to (name) ———;" that Smith signed this statement of sale, kept the check, and

sent the certificate to the defendant; and that this correspondence was conducted through the mails of the United States. Smith also testified that he read the printed statement on the back of the certificate before he signed it. That statement read when he signed it: "I have this day sold the dog named in the face of this certificate to (Name) ——, (Address) ——. Witness my hand the 24th day of April, 1922." Smith further testified that he did not know what the defendant intended to do with the certificate, and that he knew that, if the defendant sold the certificate for a dog, it would be wrong.

On the other hand, after this testimony had been given, the defendant testified that he obtained the certificate of registration of Ty Ben's Jake from Mr. Smith in this way: That he was at Senatobia, where Mr. Smith resided, one day; that Mr. Smith invited him to go up to his house, and there he bought of him and paid him $75, and agreed to pay an additional $5, for the registration papers of a "white, black and ticked" dog which Smith had, and boxed and shipped him to his own kennels, and that subsequently Smith notified him that he had the registration papers of the dog, which at the time of the sale he said he did not have with him, and that he could have them for $5, and he sent him the $5 for them, and Smith sent him the registration certificate of Ty Ben's Jake. He testified that he supposed and believed that the dog he had purchased was Ty Ben's Jake, and that the papers that Smith had given him were the genuine papers for the dog he had bought of him, and that he subsequently sold this dog about two months later, together with the certificate of registration that Smith had given him, to Mr. Miner, and that he never knew that Ty Ben's Jake was dead until long after the entire transaction was over. Mr. Smith did not take the stand and deny this testimony of the defendant. After all the testimony was submitted, the court below charged the jury that, if they believed the testimony of the defendant, they should return a verdict in his favor. They returned a verdict against him, and they must therefore have reached this verdict on the ground that there was a scheme to defraud by the use of the certificate of registration, and that the request for the instruction as to Smith as an accomplice and his testimony as such were pertinent.

From this testimony we deduce these results: Smith knew that Ty Ben's Jake was dead all the time this transaction was going on. He was Smith's dog, and he died at his house in 1919. He it was that first conceived and first suggested the use of the registration certificate of this dead dog. The defendant did not seek Mr. Smith out and ask to get or use that certificate. Smith asked him to buy it. Smith testified that he did not know what the defendant wanted it for when he purchased it, or what he intended to do with it; but he testified that he knew that, if the defendant meant to use it to sell a dog with it, it was wrong. Under rigid cross-examination Mr. Smith failed to think of or suggest any honest way in which this certificate could be made to be worth the $5 which he induced the defendant, as he said, to pay for it. No possible valuable use, other than its fraudulent use to sell an unregistered dog as a registered one, occurs to us, and we cannot believe that any other valuable use of it ever occurred to the mind of Mr. Smith. If there was here a scheme to defraud, as Smith testified, the evidence in this case seems to us conclusive that he first suggested it, and provided the means, the certificate of registration of the dead dog, by which it could be perpetrated.

[1, 2] An accomplice is properly defined to be one who is in some way concerned or associated in the commission of the crime; a partaker of the guilt; one who aids or assists or is an accessory. 4 Blacks. Com. 331. And it does not seem doubtful to us that one who first conceives a way to commit a fraud, and the means by which it can be and is committed, and then furnishes the means used to perpetrate it, is an accomplice. An accessory before the fact is an accomplice, within the rules relating to accomplice testimony. 16 C. J. 674, § 1359; People v. Curlee, 53 Cal. 604, 607; Ackley v. United States (C. C. A.) 200 F. 217, 222; Johnson v. State, 58 Tex. Cr. R. 244, 125 S. W. 16, 18; Davis v. State, 55 Tex. Cr. R. 495, 117 S. W. 159, 160, 161; Edwards v. Washington Territory, 1 Wash. T. 195, 196; People v. Swersky, 216 N. Y. 471, 477, 111 N. E. 212.

The evidence in this case so strongly tended to prove that this witness Smith was an accessory and an accomplice of the defendant in the conception and commission of the offense alleged in the indictment in this case that we are unable to resist the conclusion that the court's failure to instruct the jury regarding this issue, and its failure to instruct them with what caution they should consider his testimony, if they concluded he was such an accomplice, was an error which deprived the defendant of a substantial right in his trial.

Accordingly, the judgment below must be reversed, and the case must be remanded to the court below, with directions to grant a new trial; and it is so ordered.