UNITED STATES of America,
Appellee,

v.

Elmer Arthur **HOLT**, Appellant.

No. 19888.

United States Court of Appeals,
Eighth Circuit.

June 16, 1970.

Ronald M. Sokol, of the Legal Aid and Defender Society of Greater Kansas City, Kansas City, Mo., for appellant; Willard B. Bunch and John J. Cosgrove, Kansas City, Mo., of the same society on the brief.

Calvin K. Hamilton, First Asst. U. S. Atty., Kansas City, Mo., for appellee; Bert C. Hurn, U. S. Atty., on the brief.

Before VAN OOSTERHOUT, Chief Judge, and MATTHES and GIBSON, Circuit Judges.

GIBSON, Circuit Judge.

Elmer Arthur Holt appeals from a judgment and sentence entered June 26, 1969 by the Honorable Richard M. Duncan, Senior United States District Judge for the Western District of Missouri, based upon a jury verdict finding Holt guilty of a violation of 26 U.S.C. §§ 5851 and 5861, possession of a firearm (a sawed-off shotgun), which was illegally made in that the required making tax under 26 U.S.C. § 5821 had not been paid. Holt was acquitted of one count of aiding and abetting a felon in the interstate transportation of a firearm, which is a violation of 15 U.S.C. § 902 (e). The Court sentenced Holt to three years in the custody of the Attorney General.

Holt contends the evidence was insufficient to support the jury verdict and that the Court erred in failing to give a requested accomplice instruction in regard to the testimony of the Government's principal witness. A resume of the factual circumstances leading to this prosecution is necessary for a consideration of Holt's claims in this appeal.

Holt had become acquainted with the co-defendant in this case, Richard Green, in early October 1968. Green was living in Quincy, Illinois with a Mrs. Annie J. Dumford. Holt lived in Quincy with his wife. Green drove Dumford to her place of employment on the morning of October 25, 1968 and then picked up Holt. Holt and Green drove around drinking whisky for several hours, finally stopping at the coffee shop where Dumford worked at about 1:30 p. m. They stayed about one hour. At approximately 3 p. m. Dumford returned to her home and saw Holt, Green and Lee Hinkle leave her back porch, get into her car and drive away. Later, at 7 p. m., Green returned to Dumford's home and drove her back to work. Holt and Green entered the Shamrock Tavern in Quincy between 8 and 9 p. m. and stayed until almost 1 a. m. October 26. They met Lee Hinkle and Miss Mary Beth Thomlison there and left with them in Dumford's car.

After driving around they returned to the Shamrock Tavern to pick up Thomlison's car. Hinkle and Holt headed for Dumford's house in Dumford's car, Green and Thomlison in Thomlison's car. On the way the Dumford car ran out of gas. Therefore, Holt and Hinkle transferred to the Thomlison car which had been following them. The group of four then proceeded to the Dumford house. According to the testimony of Thomlison the purpose of going to Dumford's house was, at the suggestion of Green, to retrieve a gun hidden in some bushes there. Holt said the reason they returned was to get a bottle of whiskey.

Upon arriving at Dumford's house Holt and Hinkle left the car. According to Thomlison, Hinkle returned in two or three minutes with a bottle and Holt returned with a gun which he placed in the car lengthwise between the bucket seats. Holt claimed he returned with a bottle and Hinkle held an object which Holt was unable to recognize because he was considerably under the influence of liquor. A discussion was held among the group in the car and at Green's suggestion all but Hinkle agreed to go to Kansas City to see Green's brother. Hinkle remained behind. Thomlison claimed the gun was in full view for the duration of the trip whereas Holt tes-

tified he first saw what he thought might have been the stock of a gun sticking out from underneath the driver's seat sometime after crossing the Mississippi bridge into Missouri.

Just across the bridge into Missouri the group stopped for gasoline at a service station where the gun was observed on the floor board between the front and back seats by the service station attendant. Holt paid for the gasoline and the group left. Thomlison testified that after leaving the service station and continuing west Green suggested to Holt that when they arrived in Kansas City they might try to "trade off" the gun to Green's brother. Holt did not testify to such an occurrence. Shortly thereafter, Thomlison took over the driving and while she was driving near Dover, Missouri, she lost control of the car which flipped over twice and landed on its top off the highway. The occupants were all taken by ambulance to a hospital in Lexington, Missouri. A police officer observed the gun lying in the car between the front and back seats. It was a sawed-off single shot shotgun reduced from 28 inches to 15⅝ inches. The gun had not been registered nor had the $200 making tax been paid according to law. A .20-gauge shotgun shell which fit the shotgun was found on Holt's person at the hospital. On the morning of Saturday, October 26, Annie Dumford discovered a piece of iron and a piece of wood which she threw away but which she testified matched the barrel and stock of the gun found in the Thomlison car. Holt had no explanation for the presence of the shotgun shell on his person and denied having anything to do with sawing off the shotgun.

■■ Holt's contention that the evidence was insufficient to support the guilty verdict is without merit. We must view the evidence in the light most favorable to supporting the jury verdict. United States v. Fryer, 419 F.2d 1346 (8th Cir. 1969). In short, the evidence shows that Green and Holt spent virtually the entire day of October 25 together. Holt and Green were seen leaving the Dumford house where discarded pieces of the sawed-off shotgun were later found, Holt, at Green's urging, retrieved the gun from some bushes and placed it in the back seat portion of the car which was occupied by Holt, the gun was in full view and was seen by a service station attendant in Missouri where Holt paid for gas, a discussion was held between Green and Holt while driving in Missouri as to how to dispose of the gun once they arrived in Kansas City, and a matching shotgun shell was found on Holt's person in the hospital after the automobile accident in Missouri.

Defendant was convicted of possession in Missouri of a sawed-off shotgun on which the making tax had not been paid. Under any theory of the case the evidence was sufficient to support the verdict.

Defendant suggests that Green was in complete control and possession of the weapon while Holt had no control or possession. Even considering absolute possession as opposed to constructive possession, the evidence lends itself more readily to a theory that Holt was in actual possession or was at least in joint possession, than it does to a theory that Green had sole possession. Holt carried the gun to the car, placed it there, had it in complete view readily accessible only to him, and paid in part for the trip. Holt also appears to have been a joint decision maker in regard to where the group would go and what they would do to dispose of the gun.

The cases indicate that evidence far less substantial than that presented here may be sufficient for a finding of possession. Mack v. United States, 326 F.2d 481 (8th Cir. 1964), cert. denied, 377 U.S. 947, 84 S.Ct. 1355, 12 L.Ed.2d 309; Hill v. United States, 294 F.2d 562 (8th Cir. 1961).

■ Possession need not be sole, but may be joint, Brothers v. United States, 328 F.2d 151 (9th Cir. 1964), cert. denied, 377 U.S. 1001, 84 S.Ct. 1934, 12 L.Ed.2d 1050. The evidence summarized clearly is sufficient for a

finding that Holt was, at least, one of two or more persons in joint possession of the illicit weapon in Missouri.

Possession may be constructive as well as actual. Mack v. United States, *supra;* United States v. Burch, 313 F.2d 628 (6th Cir. 1963). The clear evidence of Holt's knowledge of the weapon's presence, his proximity to it, and the discussion regarding its disposition is ample to support a finding of constructive possession on the part of Holt.

■ Finally, the count of the indictment on which Holt was found guilty relied on 18 U.S.C. § 2, the aiding and abetting statute, as well as 26 U.S.C. § 5851. Thus, even if the jury believed Green had sole possession of the weapon, Holt's active participation in bringing the gun to the car, paying for gasoline, and planning the disposition of the gun, would be sufficient to enable the jury to find Holt had aided and abetted Green's possession of the gun in Missouri.

Defendant cites a number of cases on possession. Cases on this point are legion and we think the particular cases noted by defendant are distinguishable and no purpose would be served by a full discussion of them. Some involve possession or receipt of stolen property. The requirement in those cases that the defendants knew the materials were stolen before conviction could occur is far more stringent than the requirement under 26 U.S.C. § 5851 that a defendant need only know that he possesses a gun which turns out to be illegal before convictions may occur. The question of possession is factual and the verdict of the jury finding Holt guilty was amply supported by the evidence.

Defendant's second contention is that the trial judge erred in failing to give a requested accomplice instruction in regard to the testimony of Thomlison in his charge to the jury.

The Government contends Thomlison was not an accomplice. The Government cites Emmanuel v. United States, 24 F.2d 905 (5th Cir. 1928), cert. denied, 278 U.S. 643, 49 S.Ct. 79, 73 L.Ed. 557, and McLendon v. United States, 19 F.2d 465 (8th Cir. 1927) and a host of other United States Courts of Appeals cases for the proposition that an accomplice is one who is associated with the commission of the crime, one who aids or assists or is an accessory, and one who can be himself indicted for the principal offense. The Government claims Thomlison does not fit this description.

■ Although the question of whether Thomlison was in fact an accomplice is not free from doubt, her connection with the crimes charged in the indictment is tenuous. Her automobile was used for the interstate trip and she was present when Holt placed the shotgun in her automobile, but all of the prior acts concerning the illegal making of the gun and the conversation and acts relating to securing the shotgun were between Holt and Green. Thomlison at no time touched the shotgun and she testified that at the time the gun was secured Green just suggested they go to Kansas City to see his brother. The conversation regarding Green's brother trading off the shotgun was between Green and Holt and occurred in Missouri. Thomlison certainly had no demonstrated interest in the shotgun or its use or disposal. Her presence during the incident of carriage is explained by her infatuation with Green. While the use of her car placed her in an awkward position, we think the District Court was justified in not viewing her as an accomplice or an aider or abettor. The mere fact that one is present at the scene of a crime is not sufficient to make one an accomplice or aider or abettor. United States v. Williams, 341 U.S. 58, 64–65, 71 S.Ct. 595, 95 L.Ed. 747, fn. 4 (1951); Baker v. United States, 395 F.2d 368, 371 (8th Cir. 1968); Johnson v. United States, 195 F.2d 673, 675–676 (8th Cir. 1952).

■ However, even viewing Thomlison as a dupe or fortuitous accomplice would not require an accomplice instruction, especially where there is signifi-

cant corroborating evidence. Stoneking v. United States, 232 F.2d 385 (8th Cir. 1956), cert. denied, 352 U.S. 835, 77 S.Ct. 54, 1 L.Ed.2d 54.

In this case there is significant evidence in addition to and corroborative of Thomlison's testimony which strongly points to Holt's guilt. Holt himself admits being with Green most of the time between 10 a. m. October 25 and 2 a. m. October 26. Holt admits going to Annie Dumford's house late on the evening of October 25, though he denies retrieving the gun. Holt further admits he saw the gun in the car while traveling in Missouri, he paid for gasoline to continue the trip, and he discussed with Green the possibility of driving to Kansas City which they eventually decided to do.

Testimony of other witnesses further implicated Holt. Annie Dumford saw Holt leave her house in the afternoon of October 25 and later found the severed pieces of the sawed-off shotgun there. The service station attendant saw the gun in the car and stated it was in Holt's clear view. Finally, a matching .20-gauge shotgun shell was found on Holt's person by a nurse's aid at Lexington Hospital.

Holt cites several cases in which convictions were set aside for failure by the trial court to give an accomplice instruction. McMillen v. United States, 386 F.2d 29 (1st Cir. 1967), cert denied, 390 U.S. 1031, 88 S.Ct. 1424, 20 L.Ed.2d 288 (1968); Williamson v. United States, 332 F.2d 123 (5th Cir. 1964); McLendon v. United States, 19 F.2d 465 (8th Cir. 1927). In each of these, however, conviction was based entirely on the testimony of the alleged accomplice.

We adhere to our decision in *Stoneking, supra,* and thus, even considering Thomlison as an accomplice the failure to give an accomplice instruction was not reversible error, in light of the corroborating evidence.

Judgment affirmed.