UNITED STATES of America, Appellee,

v.

Lee Ernest WELLS, Appellant.

No. 83–1683.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 13, 1983.

Decided Dec. 2, 1983.

James M. Rosenbaum, U.S. Atty., Donald M. Lewis, Asst. U.S. Atty., Karen Sletten, Legal Intern, Minneapolis, Minn., for appellee.

Daniel M. Scott, Federal Public Defender, D. Minn., Minneapolis, Minn., for appellant.

William L. Hickey, Legal Intern.

Before LAY, Chief Judge, and HEANEY and ARNOLD, Circuit Judges.

ARNOLD, Circuit Judge.

Lee Ernest Wells was indicted on November 4, 1982 on three counts of federal firearms violations: Count I, possession by a convicted felon of a sawed-off shotgun in or affecting commerce, in violation of 18 U.S.C. App. § 1202(a)(1); Count II, posses-

sion of the same sawed-off shotgun, which had not been registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5861(d) and 5871; and Count III, aiding and abetting someone called Carl (last name unknown) to transfer the same sawed-off shotgun without having received the written approval of the Secretary of the Treasury, in violation of 26 U.S.C. §§ 5861(e), 5871, and 18 U.S.C. § 2. He was tried on Counts II and III. (Count I was severed, and later dismissed.) Wells was convicted on both counts. On May 11, 1983, the District Court [1] sentenced him to one year in prison on each count, to be served consecutively. He appeals his conviction under Count II, arguing that there was insufficient evidence of constructive possession to support his conviction. No question is raised about the validity of the conviction under Count III.

The events upon which this conviction is based took place on August 19, 1981, starting at approximately 4:30 p.m. An informant took Special Agent Alex Parker, working under cover for the Bureau of Alcohol, Tobacco, and Firearms, and Special Agent Gene Crosby of the Drug Enforcement Administration to the intersection of Eleventh and Dupont Avenues in north Minneapolis, Minnesota, to buy a sawed-off shotgun from a man named "Lee." After spotting Lee Ernest Wells, the informant introduced Wells to the agents, and told Wells that they (the agents) were interested in the gun. Wells said that he could supply them with a gun but that the gun was in a car that had been driven to a liquor store and would be returning shortly.

A short time later Carl walked up and Wells indicated that Carl would show the agents the gun. Wells left, and the agents chatted with Carl for a minute or so. Carl left, and Wells returned. Agent Parker asked Wells about the price, and Wells said fifty cents, meaning fifty dollars. Parker balked at a price of fifty dollars, so they agreed on forty dollars. Wells then told Parker, "Okay, come on with it." Parker responded that he would not pay Wells until after he saw the firearm. Carl was not present at this time.

Wells told the agents that he did not own the gun, but was selling it for a friend. He said that he could not possess a firearm because he was a convicted felon.

After that conversation, the agents and the informant crossed the street and returned to the undercover car. Wells left. About thirty minutes later, the agents saw Wells and Carl standing together across the street. Wells instructed Parker to go with Carl and that Carl would show him the gun. Wells left again; the agents did not see Wells again that afternoon. Carl and Parker walked over to a Buick Skylark. No one was in the car. Carl opened the trunk and showed Parker the sawed-off shotgun, disassembled in three pieces in a shopping bag. Parker paid Carl the forty dollars previously agreed upon with Wells, then took possession of the firearm. It was later determined that the shotgun was not registered with the Treasury Department in the National Firearms Registration and Transfer Record.

Wells contends that the evidence of possession is insufficient to sustain the conviction for possessing an unregistered firearm. We are guided by several principles for reviewing an attack on the sufficiency of the evidence, articulated in *United States v. Taylor,* 599 F.2d 832, 838 (8th Cir.1979):

> First, the court must view the evidence in the light most favorable to the verdict rendered. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Second, the court must accept all reasonable inferences which tend to support the jury verdict. *United States v. Overshon,* 494 F.2d 894 (8th Cir.), *cert. denied,* 419 U.S. 853, 95 S.Ct. 96, 42 L.Ed.2d 85 (1974). Third, the evidence need not "exclude every reasonable hypothesis except that of guilt but simply that it be sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty."

1. The Hon. Paul A. Magnuson, United States District Judge for the District of Minnesota.

*United States v. Shahane,* 517 F.2d 1173 (8th Cir.), *cert. denied,* 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 124 (1975).

Possession may be either actual or constructive. *United States v. Holt,* 427 F.2d 1114, 1117 (8th Cir.1970). It need not be exclusive or sole, but may be joint. *Id.* at 1116. It is undisputed that Wells never actually possessed the gun, and never exclusively possessed the gun. The question is whether there was sufficient evidence to find joint constructive possession. Considering the cases on constructive possession, and the standard by which we are to view the evidence, we must find that there was.

■ This Court has defined possession as knowledge of presence plus control. *Bass v. United States,* 326 F.2d 884, 886 (8th Cir. 1964), *cert. denied,* 377 U.S. 905, 84 S.Ct. 1164, 12 L.Ed.2d 176 (1964). Control need not be exclusive. *Id.* at 887. Power to dispose of the gun, or to assure its delivery, is evidence of control. *Ibid.*

Obviously Wells had knowledge of the presence of the gun. He knew it was a single-barrel shotgun, he knew it was in a car that would be returning shortly, and he knew when it returned. While Wells did not directly control the gun in a physical sense, he "was sufficiently associated with the persons having physical possession . . . that he was able to cause [it] to be produced for a customer." *United States v. Santos,* 385 F.2d 43, 45 (7th Cir.1967), *cert. denied,* 390 U.S. 954, 88 S.Ct. 1048, 19 L.Ed.2d 1148 (1968). "The person cannot escape conviction by avoiding physical contact with the device if he has power and intention to exercise control over the object, and plans its disposition or can assure its delivery either directly or through others." *United States v. Beason,* 690 F.2d 439, 443 (5th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 828, 74 L.Ed.2d 1023 (1983) (citations omitted).

■ It was reasonable for the jury to infer that Wells's assurances that the gun would be in the trunk of the car when the

car returned, and that Carl would deliver it, plus his power to set the price and then demand payment, amounted to power to dispose of the gun. Further, the jury could reasonably believe that his power to dispose of the gun evinced the necessary control for constructive possession. There are other inferences that can be drawn from the evidence, but we do not substitute our judgment for that of the jury simply because there are other reasonable possibilities. *United States v. Pardo,* 636 F.2d 535, 548–49 (D.C.Cir.1980).

Affirmed.