**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Norman Carmello VIRCIGLIO,
Defendant-Appellant.**

**No. 30471.**

United States Court of Appeals,
Fifth Circuit.

May 6, 1971.

---

William T. Kominos, Birmingham, Ala., for defendant-appellant.

Wayman G. Sherrer, U. S. Atty., L. Scott Atkins, Albert C. Bowen, Jr., R. Macey Taylor, Asst. U. S. Attys., Birmingham, Ala., for plaintiff-appellee.

Before BROWN, Chief Judge, COLEMAN, and CLARK, Circuit Judges.

COLEMAN, Circuit Judge:

This is an appeal from the conviction of Norman Carmello Virciglio in the United States District Court for the Northern District of Alabama on an indictment charging him with possessing a firearm which had not been registered in violation of 26 U.S.C. § 5861(d), § 5871; aiding and abetting in the transfer of a firearm in violation of 26 U.S.C. § 5861(e), § 5871; and wilfully and knowingly engaging in the business of dealing in firearms in violation of 18 U.S.C. § 922(a) (1), § 924(a). The first two counts of the indictment names James Franklin Rice as co-defendant, who pled nolo contendere to the charges. The case was tried before a jury on August 10, 1970, and a verdict of guilty was returned against Virciglio. We affirm.

In September of 1969 William L. Park, an investigator of the Alcohol, Tobacco, and Firearms Division of the United States Treasury Department, learned from certain unnamed police officers of Birmingham, Alabama, that Virciglio might possibly be dealing in illegal weapons. Park received like information from an informer named Howard Kirby. Although Park had known Kirby, he had not previously received information from him. Park did know that on three occasions Virciglio had been convicted of felonies.

About the middle of September, 1969, Peter Ghent, an investigator for the Al-

cohol, Tobacco, and Firearms Division, was introduced to the informer, Kirby. At this time Ghent was given an assignment to buy a machine gun from Virciglio. Subsequently, Kirby accompanied Ghent to Virciglio's Bi-Rite Delicatessen and introduced him to Virciglio.

On this occasion Ghent asked Virciglio if he had a machine gun for sale. Virciglio replied that he did not but that he would try to get one. He then asked Ghent how he could be contacted. The agent stated that he would contact Virciglio. Before Ghent and Kirby left, Virciglio presented Ghent with his business card, which contained his telephone number. During the next two or three days Ghent contacted Virciglio several times and was advised by him that arrangements for the sale of the machine gun were not complete.

On September 27, 1969, Ghent returned to the Bi-Rite Delicatessen to inquire about the progress on the sale of the machine gun. On this visit Ghent carried with him $100 provided from government funds by Agent Park. This money was to be used by Ghent to buy or attempt to buy a pistol or revolver from Virciglio. At this meeting Virciglio told Ghent that the machine gun was still not available. However, in response to Ghent's inquiry Virciglio showed him a Smith & Wesson .38 Special, which Ghent purchased for $75. This weapon was admitted into evidence at the trial.

Two days later Ghent called Virciglio, who then advised that a machine gun was available. Ghent was told to be at Virciglio's residence at approximately 7:30 that night, with $800 cash.

Immediately after Ghent's first contact with Virciglio, Virciglio contacted James Franklin Rice and told him that he knew a man who wanted to buy a machine gun. Rice was a gun collector and had dealt in guns with Virciglio before. Rice was indicted as a co-defendant in this case, pleaded nolo contendere, and testified against Virciglio. Rice testified that when Virciglio first got in touch with him he wanted nothing to do with the sale of a machine gun. However, Rice was in touch with Virciglio six or seven times after the initial contact and finally told Virciglio that he had a machine gun. Virciglio admitted that he contacted Rice after each contact with Ghent. Rice testified that he informed Virciglio that the sale was to be for $200 and to be made to Virciglio.

The plan developed into Rice meeting Virciglio and Ghent at Virciglio's residence. Rice arrived at Virciglio's house and parked his car on the grass median of the street beside Virciglio's truck. Virciglio came from his house and talked with Rice as they waited for Ghent. Subsequently, Ghent arrived and was introduced by Virciglio as the man who wanted to buy the machine gun. Ghent asked to examine it, whereupon the truck was opened by Rice and Ghent took the gun to Virciglio's truck and looked at it. The .45 caliber Thompson sub-machine gun was not registered and the written form for transfer had not been filed. After the examination Ghent handed $800 to Virciglio. Virciglio claims that he then gave the money to Rice, but both Rice and Ghent deny this. Following the sale of the weapon, Ghent left, whereupon Rice and Virciglio went into Virciglio's house. At this point Rice testified that Virciglio paid him $250, but Virciglio testified that Rice gave him $400 *as a gratuity*. Either way, Virciglio got half the money.

From September 29, 1969 to November 25, 1969, Ghent met Virciglio approximately six times. At these meetings he attempted to purchase more machine guns. He testified that his attempts failed because Virciglio could not make the proper arrangements. On November 25, 1969, Ghent asked Virciglio if he could purchase another pistol. Virciglio showed him several, but Ghent declined to purchase any. After leaving Virciglio's Delicatessen Ghent went to the United States Commissioner's office and obtained a search warrant and an arrest warrant for Virciglio. Subsequently, Agent Park and other agents executed the warrants. The search pro-

duced an assortment of seventeen rifles, shotguns, and pistols and approximately 879 rounds of assorted ammunition. Virciglio was arrested.

█ The main contention of the appellant is that he was entrapped as a matter of law. Entrapment occurs where it appears that agents of the Government or persons under their control incited, induced, instigated, or lured a person into committing an offense which he otherwise would not have committed and had no intention of committing, Sherman v. United States, 1958, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848; Sorrells v. United States, 1932, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413. See, also, Kadis v. United States, 1 Cir., 1967, 373 F.2d 370, and United States v. DeVore, 4 Cir., 1970, 423 F.2d 1069. In DeVore, which followed the holding in Kadis, the Court stated:

"If the defendant, through government witnesses or otherwise, shows some indication that he was corrupted by government agents, the burden of disproving entrapment will be on the prosecution. A showing of solicitation alone, however, will not suffice to place the burden of going forward with evidence on the government, since solicitation by itself is not the kind of conduct that would persuade an otherwise innocent person to commit a crime. [Cases cited]. * * * The defendant, therefore, must also produce some evidence of unreadiness on his part, or of persuasion by the agent."

█ Viewing the evidence in the light most favorable to the verdict, Glasser v. United States, 1942, 315 U.S. 60, 62 S. Ct. 457, 86 L.Ed. 680, it is obvious from the foregoing recitation that Virciglio's case falls short of entrapment as a matter of law. His contentions to the contrary must be rejected. The agents of the Government presented the appellant with opportunities which he embraced and the jury rejection of the entrapment defense is supported by the record. Evaluating the jury charge in its entirety, rather than fragmentarily, we observe no prejudice to the defendant.

█ Virciglio strongly urges that he was never in actual or constructive possession of the machine gun. It is quite apparent that he never had *actual* possession of the weapon but there was ample basis for the jury to find that he did have constructive possession, that is, he did have the intention and the power to exercise dominion and control over the machine gun. Such possession may be joint, in that two or more persons can share it. In the instant case Virciglio planned the sale. There would have been no sale without him. At the time of the sale he was the one who received the money from Ghent, of which he accepted and retained part of the purchase price.

In light of these facts we rely on the holding in United States v. Holt, 8 Cir., 1970, 427 F.2d 1114, 1117.

"Thus, even if the jury believed Green had sole possession of the weapon, Holt's active participation in bringing the gun to the car, paying for the gasoline, *and planning the disposition of the gun* [Emphasis ours] would be sufficient to enable the jury to find Holt had aided and abetted Green's possession of the gun in Missouri. * * * The question of possession is factual and the verdict of the jury finding Holt guilty was supported by the evidence."

Consideration of the remaining points raised by appellant discloses nothing which would justify reversal.

The judgment of the District Court is

Affirmed.