**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Allen DANIELS, Defendant-Appellant.**

**No. 75–1315.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 9, 1975.

Decided Dec. 18, 1975.

Alan S. Konop, Konop, Skou, Schlachter & Weisberg, Toledo, Ohio, for defendant-appellant.

Frederick M. Coleman, U. S. Atty., James D. Jensen, Toledo, Ohio, for plaintiff-appellee.

Before MILLER, LIVELY and ENGEL, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

Allen Daniels has appealed from his conviction under a one-count indictment charging him, Rose Marie Farmer, and George E. Crawford with willfully and knowingly possessing a firearm, particularly described as an AK–47 fully automatic assault rifle, Serial No. 10120279, 7.62 MM, not registered to them in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5861(d), 5871 and 18 U.S.C. § 2. All of the defendants waived a jury trial, and the case was tried to the court. At the close of the government's case, the defendants' motions for judgments of acquittal were denied. The defendants rested their cases without offering any evidence. The court found defendants Daniels and Farmer guilty as charged but found defendant Crawford not guilty. Daniels was given a sentence of three years. Farmer has not appealed.

The facts as found by the court are as follows: On October 2, 1973, Daniels purchased for cash at Kowalka's Gun Store, a licensed dealer in firearms near Toledo, Ohio, a commando MK III semi-automatic rifle. At the time of this purchase, Daniels gave his address as 851 Tecumseh, Toledo.

On November 12, 1973, Daniels again came to the store, accompanied by Farmer, and engaged in some conversation with John Kowalka, a store employee. James Donoher, a Toledo police officer, who was not then in uniform, was also present at this time.

Daniels complained that the rifle he had purchased did not work properly. He initially asked for a refund but, after some conversation, asked about buying a different make of rifle and a handgun "for the lady" (Farmer). Eventually, a Smith and Wesson Model 19 and a Colt AR–15 rifle were selected. The commando MK III was accepted as a trade-in on the purchase price of these two guns. Although Daniels paid for the weapons, the sales slip was made out to Farmer who gave her address as 1160 Buckingham Street, Toledo.

Daniels then asked if he could buy ammunition for a Chinese machine gun. Kowalka said that he did not know what type of ammunition was required and that it would be necessary for him to see the gun. Daniels then left the store and went to a Chevrolet automobile parked outside. Officer Donoher followed Daniels and noted the license number and description of the automobile. He also observed another man in the automobile.

Daniels opened the trunk of the Chevrolet, fumbled around inside for a time, and then returned to the store carrying an ammunition clip. Kowalka examined the clip but was unable to determine the type of ammunition required. It appears that Donoher was also licensed to deal in machine guns and was considered to be an expert concerning such weapons. These facts were known to Kowalka who asked Donoher to examine the clip. Donoher determined that the clip was made for use with a Chinese AK–47 machine gun. He indicated that a specific size of ammunition was needed for the clip. Kowalka stated that he had no ammunition of that size in stock and that it would be some time before it would be available.

After this discussion, Daniels and Farmer entered into another transaction with Kowalka in which the Smith and Wesson revolver was exchanged for a Mauser .380 calibre pistol. The sales slip and papers were again made out in Farmer's name. Daniels and Farmer then left the store.

Officer Donoher then contacted Special Agent Joseph Shaw of the Alcohol, Tobacco and Firearms Division and informed him of the events that had taken place at Kowalka's Gun Store. Shaw checked the license number of the Chevrolet automobile, determining that it was a rental vehicle. The rental agency informed Shaw that the automobile had been rented on October 30, 1973, to G. E. Crawford whose address had been given as 3452 Inverness, Toledo. Crawford was shown to have returned the automobile to the rental agency on November 19, 1973. The rental agency's description of the automobile matched the description given by Officer Donoher.

Shaw and other officers then attempted to locate the Chevrolet. They discovered the automobile parked at the address given by Farmer to Kowalka, 1160 Buckingham Street. Shaw, using binoculars, observed the automobile as it was parked at this address in the afternoon of November 12. After six o'clock P.M., an unidentified man was observed leaving the house at the Farmer address and opening the trunk of the automobile which concealed him from Shaw's view. After a short time, the man closed the trunk and returned to the house. As he returned, he held his left arm close to his side and walked "stiff-legged" as if he was concealing something under his clothing. Shaw then terminated his surveillance.

The following day, November 13, 1973, Shaw obtained a search warrant and, accompanied by other agents and local policemen, executed the warrant by searching the house at 1160 Buckingham Street. At trial, Farmer's counsel admitted that the house belonged to Farmer. When Shaw went to the front door of the house, the door was opened and immediately closed. Shaw then announced that he had a search warrant and a young girl opened the door. Farmer was seated on a couch in the living room. Other agents entered the house, some through the kitchen door. One of them, John Thomas, went into the bedroom on the first floor of the house where he discovered a gun case in a closet opening off the bedroom. Thomas opened the case and found an AK–47 automatic rifle, the weapon specifically described in the indictment. The closet and bedroom contained women's clothing. A pair of men's slippers was found on the bedroom floor. Also found in the bedroom was a certified envelope addressed to Allen Daniel at 851 Tecumseh St., Toledo. Although Farmer informed one of the agents that no one else was present in the house, Crawford was later discovered in an upstairs bedroom. An envelope addressed to him at 1160 Buckingham Street, Toledo, was found in the bedroom. Shaw arrested Farmer and Crawford and took possession of the AK–47. Daniels was arrested later.

Test firing of the AK–47 revealed that it was a fully automatic weapon. The evidence established that the weapon was not registered to any of the defendants in the National Firearms Registration and Transfer Record.

Defendant Daniels argues that the evidence is not sufficient to show possession by him of the unregistered AK–47 described in the indictment. We agree with this contention and therefore must reverse the conviction of Daniels.

■ On a criminal appeal, the evidence is to be viewed in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), and every reasonable inference from the evidence must be drawn in the government's favor. *United States v. Wolfenbarger,* 426 F.2d 992, 994 (6th Cir. 1970); *United States v. Ayotte,* 385 F.2d 988 (6th Cir. 1967), *vacated on other grounds,* 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969). Pos-

session may be either actual or constructive, and it need not be exclusive but may be joint. *United States v. Craven,* 478 F.2d 1329 (6th Cir.), *cert. denied,* 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973); *United States v. Black,* 472 F.2d 130 (6th Cir. 1972), *cert. denied,* 411 U.S. 969, 93 S.Ct. 2161, 36 L.Ed.2d 691 (1973); *United States v. Holt,* 427 F.2d 1114 (8th Cir. 1970). Actual possession exists when a tangible object is in the immediate possession or control of a person. Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others. *United States v. Craven, supra* ; *United States v. Viraglia,* 441 F.2d 1295 (5th Cir. 1971); *United States v. Burch,* 313 F.2d 628 (6th Cir. 1963).

▮ In this case, it is unreasonable to infer that Daniels had possession of the AK–47 found in the closet of the bedroom at 1160 Buckingham Street. The house at that address belonged to Farmer not to Daniels. The only evidence tending to show that Daniels was ever present in the house was the envelope bearing his name. However, the envelope was addressed to him at 851 Tecumseh St., not 1160 Buckingham. There is no evidence tending to show that Daniels was responsible for placing the envelope in the bedroom where it was found.

Other than the envelope so found in the bedroom, the only evidence tending to connect Daniels with the weapon found at the Farmer house is a tenuous chain of events and inferences beginning at Kowalka's Gun Store and ending with the discovery of a weapon in the bedroom closet. Donoher testified that Daniels asked Kowalka if he had ammunition for a "Chinese machine gun" and if Kowalka wanted to see the gun. After Kowalka answered that he did not want to see the gun, Daniels offered to produce an ammunition clip. Daniels then left the store, opened the trunk of an automobile outside, fumbled around inside the trunk and returned to the store with a clip which Donoher identified as suitable for use in an AK–47. The firearm, if any, to which the clip belonged was never seen at the store. The clip was not traced to the particular AK–47 described in detail by make and serial number in the indictment. Even if it should be assumed that Daniels had a weapon of this type when he was present at the store (at best a questionable assumption), there is nothing to link such gun with the weapon found at the Farmer house.

Later that same day, the Chevrolet automobile from which Daniels had removed the clip was observed at the Farmer house. Crawford, not Daniels, was shown to have rented the automobile. By showing that an *unidentified* man emerged from the Farmer house, opened the trunk of the automobile, and returned to the house with his left arm straight down to his side walking "stiff-legged," the government seeks to infer that the AK–47 found in the house was transferred to the house from the trunk of the automobile. Again, no firearm was actually seen.

Taken as a whole, these facts, while suggestive, are not sufficient to establish that the AK–47 found at the Farmer house and particularly described by make and serial number in the indictment was ever in the immediate possession and control of Daniels nor that Daniels had the power at any time to exercise dominion and control over the firearm either directly or through others. The circumstantial evidence connecting Daniels with the specific firearm found at the Farmer house is too tenuous in our view to support his conviction beyond a reasonable doubt.

The facts in this case are less convincing than those presented in *United States v. Gates,* 491 F.2d 720 (7th Cir. 1974), in which the conviction was reversed. In that case, an unregistered firearm was discovered on the floor of an automobile under the seat in which the defendant, a passenger, had been

riding. As a police officer approached the vehicle, the defendant "appeared to be nervous and looked to the front towards the floor of the car. It looked like he was doing something with his hands . : .." The court refused to uphold the defendant's conviction on these facts, holding that mere proximity, standing alone, was insufficient to sustain a conviction. In the present case, the evidence is insufficient to support a finding even of proximity to the weapon minutely described in the indictment.

The conviction of defendant Daniels is therefore reversed with directions that the district court enter judgment of acquittal of defendant Daniels.