**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John T. MASEN, Defendant-Appellant.**

**No. 80–1600.**

United States Court of Appeals,
Fifth Circuit.
Unit A

March 19, 1981.

Morris Jackson Hampton, Dallas, Tex., for defendant-appellant.

David R. Bickel, Dallas, Tex., for plaintiff-appellee.

Before WISDOM, COLEMAN and RANDALL, Circuit Judges.

PER CURIAM:

John T. Masen, being a person who has previously been convicted of a crime punishable by imprisonment for a term exceed-

ing one year,[1] was found guilty of knowingly and unlawfully *receiving* a firearm which had been shipped and transported in interstate commerce, 18 U.S.C. 922(h) and 924(a).[2] The conviction is challenged—correctly—on the ground that the evidence was insufficient to show that Masen had received the firearm which had been shipped in interstate commerce.

In 1976 and 1977 Masen worked as a gunsmith in the repair shop which was a part of The Gun Store, previously The Sportsman, in Dallas, Texas. By oral agreement with the owner of The Gun Store, A. J. Reed, Masen was allowed to use the repair shop as a place of business in exchange for the services rendered Reed as a gun appraiser and gun repairman. Masen paid no rent and was not an employee of Reed. He had worked under a similar arrangement with the previous owner, Bob Taylor, who sold the store in May, 1976.

The indictment read as follows:

The Grand Jury charges:

On or about March 18, 1977, in the Dallas Division of the Northern District of Texas, JOHN T. MASEN, defendant, a person who had been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, did knowingly and unlawfully receive a firearm, to wit, a Browning .12 gauge shotgun serial number 9001S69, which had been shipped and transported in interstate commerce.

In violation of Title 18, United States Code, Sections 922(h) and 924(a).

It is as elementary as any remark which Sherlock Holmes ever made to Dr. Watson that by prosecuting this case the government assumed the burden of proving by the evidence beyond a reasonable doubt that Masen had *received* the gun *via* a shipment in interstate commerce. Proof that he might have done it, or could have done it, is not enough, *Causey v. United States*, 352 F.2d 203 (5th Cir. 1965).

Now, let us examine the proof, in the light most favorable to the verdict.

In late 1976, Joe Culp, a frequent customer of Masen's repair shop, left a Browning shotgun *at The Gun Store* to be shipped to the Browning factory in Missouri for repairs. Customer Culp testified that he was not sure whether he gave the gun to Masen or simply left it at the store. Several months later the gun was returned, but Culp did not remember, and could not testify, how he regained possession of the gun or from whom he regained it, whether from Masen or from the store.[3]

Col. William Hastings, part-time employee at The Gun Store, testified that Masen was the authorized warranty repairman for Browning guns but the truly significant part of his testimony was that guns which came in by mail were *normally* left at the front of the store and if a signature was required, any one of the several employees could and would sign for it. If the package was addressed to Masen it was normally sent back to him; but if he was not in, another employee would normally receive it and sign for it.

Mark Francis, an employee of Browning Arms, testified that the Browning shotgun in question had been shipped to Arnold, Missouri, for repair. It was received in a box which had Masen's name on it, and it was returned in a box addressed to Masen

1. Masen was convicted on September 10, 1964, for failure to record the sale and delivery of a firearm in violation of 15 U.S.C. 903(d).

2. Section 922(h) reads in pertinent part:
   "It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; . . . to receive any firearm . . . which has been shipped or transported in interstate . . . commerce."
   Section 924(a) reads in pertinent part:

   "Whoever violates any provision of this chapter [shall be guilty of an offense against the United States]."

3. *On recross-examination Culp testified as follows:*
   Q. [Defense Attorney] And then several months later it came back and you don't remember who it came back to or how you got it or whether it was your wife or who handed it to you; is that right?
   A. That's correct. My wife and I both picked up guns there that were repaired.

at The Gun Store address, but Browning had no record showing the arrival of the gun in Dallas or identifying the person who received the gun.

On this character of proof, the government contends that the evidence was sufficient to justify an inference that Masen had actual or at least constructive possession of the Browning shotgun and that receipt necessarily precedes possession, relying on *United States v. Craven*, 478 F.2d 1329 (6th Cir. 1973); *United States v. Virciglio*, 441 F.2d 1295 (5th Cir. 1971).[4] The facts of those cases are inapposite to the facts presently before us. They cannot afford any comfort for the government in this case.

We have already recited the evidence on which the government relied for a conviction in this case. We need not repeat it. It is clear to us that no reasonably minded jury could have believed from this evidence beyond a reasonable doubt that Masen, rather than The Gun Store, received this shotgun prior to its delivery to the customer who brought it in for repairs.

Accordingly, we reverse this conviction and remand the case to the District Court with directions to dismiss the indictment.

REVERSED.

---

**4.** Circuit Judge Coleman is a member of the panel deciding the instant case. He was the author of the opinion in *United States v. Virciglio*.