918 F.2d 179
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard WERSHE, Defendant-Appellant.
 No. 88-1666.
 United States Court of Appeals, Sixth Circuit.
 Nov. 14, 1990.
 
 Before NATHANIEL R. JONES and WELLFORD, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 On April 22, 1988, a jury found Richard Wershe, appellant, guilty of possession of twenty-three silencers, firearms as defined by 26 U.S.C. Sec. 5845(a)(7), which were not registered to him in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. Sec. 5861(d). Thereafter, appellant was sentenced for a term of seven and one half years imprisonment plus a fifty dollar special assessment fee.
 
 
 2
 Appellant was charged with possession of silencers in violation of 26 U.S.C. Sec. 5861(d). In order to sustain a conviction under this section, the government must prove beyond a reasonable doubt that appellant possessed, either actually or constructively, silencers after the effective date of the statute, November 1986.
 
 
 3
 On October 27, 1987, Detroit police officers, accompanied by agents, executed search warrants issued by a state court on 13059 Hampshire and 13028 Hampshire in Detroit, Michigan. These two residences were across the street from one another.
 
 
 4
 The officers first searched the residence of Vera Wershe, appellant's mother, at 13059 Hampshire. At this house, the officers seized various items, including $2,000.00 in cash located in a safe belonging to appellant, drugs, weapons, and ammunition. In the basement of the house, the officers seized a white box filled with components for twenty-three silencers.
 
 
 5
 The officers next searched the house at 13028 Hampshire, appellant's residence. Here, the officers seized five pistol-type, threaded gun barrels. The threaded gun barrels fit the silencer components found at appellant's mother's house.[1]
 
 
 6
 Officer Parks transported the silencer components from Detroit to the federal laboratory in Rockville, Maryland. The white box that had contained the silencer parts was not sent to the laboratory, apparently because it was "disintegrating." The box was not tested for fingerprints. The silencer parts were turned over, however, for fingerprint analysis and a number of usable latent prints were found on seven which belonged to appellant. An expert testified that appellant's fingerprints were on the silencers, but he could not determine when the fingerprints had been made.[2]
 
 
 7
 Appellant's mother, who was seventy-seven years old at the time of the searches, testified that some unidentified boys who had cleaned her house had left the box outside of her home prior to 1986. When she found the box, she said she dragged it into the house and down to the basement. Ms. Wershe stated that she did not tell any of the officers that the items in the basement belonged to appellant. Biernacki, one of the officers present at the search, testified in response that when he showed Ms. Wershe the silencers, she stated that she had no knowledge of where the items had been in the basement and identified the items as belonging to her son.
 
 
 8
 Appellant contends that the district court erred in not granting his motion for acquittal on the possession charge. He maintains that the government failed to prove that appellant had actual or constructive possession of the silencers. Although a close case, we find that the evidence was sufficient to prove that appellant had continuous, constructive possession of the silencer parts.
 
 
 9
 In reviewing a jury's verdict under a sufficiency of the evidence standard, we must not weigh the credibility of the witnesses; rather "all of the evidence is to be considered in the light most favorable to the prosecution." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (emphasis in original).
 
 
 10
 A defendant claiming insufficiency of the evidence bears a heavy burden. United States v. Vannerson, 786 F.2d 221, 225 (6th Cir.), cert. denied, 476 U.S. 1123 (1986) (quoting United States v. Soto, 716 F.2d 989, 991 (2d Cir.1983)). "The government must be given the benefit of all inferences which can reasonably be drawn from the evidence, even if the evidence is circumstantial." United States v. Adamo, 742 F.2d 927, 932 (6th Cir.1984), cert. denied sub nom. Freeman v. United States, 469 U.S. 1193 (1985) (citations omitted).
 
 
 11
 The government's theory of the case was based on appellant's constructive possession of the silencers. Constructive possession exists when: "a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." United States v. Craven, 478 F.2d 1329, 1333 (6th Cir.), cert. denied, 414 U.S. 866 (1973) (citing United States v. Virciglio, 441 F.2d 1295 (5th Cir.1971); United States v. Burch, 313 F.2d 628 (6th Cir.1963)).
 
 
 12
 The prosecution established that five gun barrels were found in a bedroom in appellant's home. Twenty-three gun silencers that fit the barrels were found at his mother's home across the street and appellant's fingerprints were found on several of the silencers.
 
 
 13
 The government maintains that Biernacki's testimony also should be considered as evidence that appellant exercises dominion and control over the silencer parts. He testified to impeach Ms. Wershe's story that would tend to absolve her son (he stated that she told him that the items in the basement belonged to appellant). This evidence was used for impeachment purposes only, and the district court instructed the jury that such testimony could only be used to impeach the credibility of the mother, not to establish the truth of Biernacki's testimony. This testimony itself is not taken into consideration when determining whether the government produced sufficient evidence to convict appellant.
 
 
 14
 A reasonable juror could well have believed Biernacki's testimony, thus concluding that Ms. Wershe's testimony as a whole was a fabrication. The jury could have reasonably concluded that an elderly woman in Ms. Wershe's physical condition could not have possibly dragged the disintegrating box of silencer parts into her basement. Thus, the factfinder could have reasonably inferred that Ms. Wershe was fabricating in order to protect her son. Such an inference may be taken into consideration in deciding whether there was sufficient evidence to convict appellant.
 
 
 15
 We affirm the conviction because we find sufficient evidence for a juror to convict on the charge at issue. A reasonable juror could conclude that because of the proximity of the houses, appellant had free access to his mother's home. The silencer components fit the gun barrels found on a bed in appellant's home and there was a basis, then, for a reasonable inference that appellant frequently used or had access to the barrels and silencer parts. Appellant cites United States v. Beverly, 750 F.2d 34 (6th Cir.1984), in support of its position that fingerprint evidence alone does not establish possession. We find more evidence in this case than in Beverly to prove possession by appellant of the weapon or silencers involved.
 
 
 16
 Appellant also cites United States v. Daniels, 527 F.2d 1147 (6th Cir.1975), in support of his position that the government failed to prove constructive possession. In Daniels, not knowing he was in the presence of a police officer, the defendant asked a gun shop owner if he stocked ammunition for a Chinese machine gun. Id. at 1148. He then retrieved an ammunition clip from the trunk of the vehicle he was driving to show the owner. Id. The police officer examined the clip as well and noted that it fit an AK-47 Chinese machine gun. Id. The vehicle appellant was driving was traced to a residence belonging to someone other than the appellant and the police officers confiscated the AK-47. Id. at 1149. The government obtained a conviction on a constructive possession theory, but this court reversed finding the evidence insufficient to convict the defendant. Id. at 1150.
 
 
 17
 We conclude also that this case is distinguishable from Daniels. The defendant in Daniels was never linked to the house where the gun was found. The Court found that no evidence demonstrated that the defendant was responsible for the letter being in the house. Daniels, 527 F.2d at 1150. In this case, appellant was linked to the house where the silencers were found: It was his elderly mother's house and it was across the street; The government proved that gun barrels found in a bedroom in appellant's home fit the silencer components; Finally, appellant's fingerprints were on several of the silencers.
 
 
 18
 In addition to constructive possession, the government was also required to prove beyond a reasonable doubt that appellant possessed the silencer parts after the effective date of the statute, November 15, 1986. Concededly, the evidence to prove this element is sparse. The prosecution could prove the appellant had possession of the silencer parts by showing when his fingerprints actually were put on the parts.
 
 
 19
 The box in which the silencers were found was seized on October 27, 1987, and appellant's fingerprints were found on the silencers. The experts were unable to give a precise date on which the silencers must have been touched by Wershe and because of the fact that possession prior to November 1986 would have been legal, Wershe argues that there was a failure of proof of his possession after that date. This argument is seriously flawed and the jury plainly was not disposed to accept it. According to the indictment, possession was charged to have existed on or about October 21, 1987. The seizure, pursuant to search warrant, occurred on October 27, 1987. It was possession on that date which was the subject of the charge and on which the court instructed the jury and concerning which both counsel argued. The government plainly proceeded on a theory of constructive possession by Wershe through the physical possession of his mother on October 21. If, therefore, his mother was in physical possession thereof at that date but Wershe exercised the continued control or dominion and power of control over them at that date, then he was guilty of constructive possession on that date and it becomes relatively inconsequential that he may actually have physically touched the silencers and left his fingerprints on them on or before November 1986. Thus, there is nothing in the law or in the facts of this case to suggest that the fingerprints had to have been placed on the silencers after November 1986. Wershe was entitled to and did present his own theory of defense but equally the jurors were just as entitled to disregard it, and the evidence to support the verdict in this respect is persuasive.
 
 
 20
 The fingerprint expert testified that he could not determine the date the fingerprints were placed on the gun parts. He stated that they could have been made as long as ten years ago or as recently as the day before the box was seized. He also stated that appellant's fingerprints were very clear, and that fingerprints dissolve over time. Based on all of the evidence, we conclude that a rational juror could draw an inference that appellant had constructively possessed the silencers after the effective date of the statute.
 
 
 21
 Appellant finally contends that the district court committed plain error when it did not specifically instruct the jury that in order to find appellant guilty it must find that appellant constructively possessed the silencers after November 15, 1986. The district court instructed the jurors in part:
 
 
 22
 A firearm must be registered in the National Firearms Registration and Transfer Record in order to be legally possessed or transferred under ... Title 26, Section 5841 United States Code.
 
 
 23
 The term firearm means any silencer and the term firearm silencer means any device for silencing muffling or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication. And the effective date of this statute is November 15th, 1986.
 
 
 24
 Appellant did not object to these instructions.
 
 
 25
 Because appellant did not object to the instruction, reversal is only required if the omission constituted plain error. Fed.R.Crim.Pro. 30 & 52(b); United States v. Frady, 456 U.S. 152, 163 (1982). This doctrine "is to be used sparingly, ... only in exceptional circumstances, ... and solely to avoid a miscarriage of justice, ... 'on appeal from a trial infected with error so "plain" the trial judge and prosecutor were derelict in countenancing it.' " United States v. Hook, 781 F.2d 1166, 1172 (6th Cir.), cert. denied, 479 U.S. 882 (1986) (citations omitted).
 
 
 26
 When a jury instruction issue is preserved for appeal, the standard of review is whether the charge, taken as a whole, fairly and adequately submitted the issues and explained the applicable law to the jury. United States v. Martin, 740 F.2d 1352, 1361 (6th Cir.1984), cert. denied, 472 U.S. 1029 (1985). The alleged error in this case is an incomplete jury instruction to which no objection was made. Reversal for such alleged errors are rarely justified since it is not as prejudicial as a misstatement of law. Hook, 781 F.2d at 1172-73. We conclude that the instructions, taken as a whole, fairly and adequately submitted the issues and explained the applicable law to the jury.
 
 
 27
 They did contain a reference to the effective date of the statute. By examining the instructions as a whole, the relevant usage of the date becomes clear. Appellant argues that the court's instruction that possession is established when a person "knowingly has both the power and the intent at any given time to exercise dominion and control" (emphasis added) constituted plain error since it failed to identify that possession must have occurred after November 1986, but the district court did include the effective date of the statute elsewhere in the instructions. The instructions also state that the indictment charges that the offense was committed on a certain date. The indictment charged that the offense was committed on or about October 21, 1987. The effective date of the statute is November 1986. It is logical to assume that by finding appellant guilty, the jurors concluded that the offense, possession of the silencer parts, was committed on a date "reasonably near the alleged date," October 21, 1987, and after November, 1986.
 
 
 28
 We assume that the jury also understood the instructions and applied them correctly because the significance of the effective date of the statute was discussed frequently during the trial. There was considerable testimony as to when appellant put his fingerprints on the silencers. The jury learned through evidence presentation that the registration of silencer components was not required until after the effective date of the statute. Finally, in both his opening and closing statements, appellant's counsel told the jury that the statute requiring registration of silencers did not become effective until November 1986 and that the government had to prove that appellant possessed the silencers after the effective date.
 
 
 29
 Finally, appellant contends that he was deprived of due process of law because the white box in which the silencer components were originally stored was not preserved for evidence. Appellant maintains that had the box been preserved, he could have shown that the box had been damaged by the dragging and that it contained his mother's fingerprints corroborating her testimony.
 
 
 30
 Defendants have a constitutional protected privilege to request and to obtain from the prosecution evidence that is either material to the defendant's guilt or relevant to the punishment imposed. Brady v. Maryland, 373 U.S. 83, 87 (1963). Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt. United States v. Agurs, 427 U.S. 97, 112 (1976).
 
 
 31
 This duty to preserve evidence is limited to evidence that is expected to play a significant role in the suspect's defense. California v. Trombetta, 467 U.S. 479, 488 (1984) (Court rejects challenge to State's failure to preserve breath samples taken in drunken driving case). To play a significant role in the suspect's defense, the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 489. See also Ford v. Seabold, 841 F.2d 677, 692-93 (6th Cir.), cert. denied, 488 U.S. 928 (1988); Elmore v. Foltz, 768 F.2d 773, 777-78 (6th Cir.1985).
 
 
 32
 The Court further limited the prosecution's duty in Arizona v. Youngblood, 109 S.Ct. 333 (1988). The Court stated that a requirement that the police retain and preserve "all material that might be of conceivable evidentiary significance" would be too onerous a burden. Id. at 337. The requirement to preserve evidence is limited to situations where "the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." Id. The Court then held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id.
 
 
 33
 Applying these tests to this case, appellant has failed to demonstrate an infringement of his constitutional rights. Appellant has failed to show or even allege bad faith on the part of the police. Evidence demonstrated that the original white box was "in fairly poor construction. We had taped it several times just to hold it together," and that the box had "virtually disintegrated." Furthermore, the condition of the box was so poor that the silencer parts had to be taken out of it in order to ship the parts for testing. Finally, testimony revealed that the box had not been examined for fingerprints because due to the prior need to handle the box, it had not been preserved properly for fingerprint testing. Appellant neither presents proof or alleges that the police acted in bad faith in failing to preserve the box.
 
 
 34
 For the reasons stated, we AFFIRM the defendant's conviction.
 
 
 
 [1]
 At the trial, a firearms expert explained how the silencer parts fit the barrels and how they could be made functional
 
 
 [2]
 On re-cross examination, the expert stated that in his opinion the prints could not have been on the parts for more than three years, although he admitted he was not sure. The basis of his opinion was that if the prints had been on the parts for more than three years, they would not have been as legible as they were. The expert, however, could not state any definite time periods during which the prints could have been made