# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-51146

United States Court of Appeals
Fifth Circuit

**FILED**
January 25, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

ELIZAR SAUCEDO MADRID; PEDRO SAUCEDO MADRID,

> Defendants - Appellants

Appeals from the United States District Court
for the Western District of Texas
USDC No. 7:15-CR-122-2

Before HIGGINBOTHAM, JONES, and HAYNES, Circuit Judges.

PER CURIAM:*

A jury convicted two brothers of conspiring to possess controlled substances with intent to distribute, possessing firearms in furtherance of that drug crime, and felon in possession of a firearm. They challenge the sufficiency of the government's evidence, and one additionally argues that the government violated its *Brady* duty. Because we find the evidence sufficient to support the convictions and the *Brady* argument without merit, we affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-51146

**I.**

Pedro Saucedo Madrid, Elizar Saucedo Madrid, and Albert Prieto, Jr., were indicted for conspiracy to possess controlled substances with intent to distribute. The Madrids were further indicted for possession of firearms in furtherance of that drug crime and felon in possession of a firearm. Prieto pled guilty and testified against the Madrids, hoping for sentencing leniency. The charges against the Madrids went to trial. The government's trial evidence showed as follows:

Before the events of this case, Prieto had been arrested for drug possession. As a result, he briefly acted as an informant for Homeland Security. The investigation into the Madrids began when Prieto was caught with drugs again and informed Homeland Security that he had gotten the drugs from the Madrid brothers. That tip led investigators to the defendants, eventually resulting in their arrest and trial.

Pedro and Elizar Madrid were brothers who went by the names "Kiko" and "Chiquito," respectively. They lived together at a trailer park on Big Valley Road in Odessa, Texas. Prieto testified that he initially met the defendants through Facebook, where he reached out to them seeking to act as their dealer. Elizar Madrid asked if Prieto "wanted to work," which Prieto interpreted as asking whether he wanted to sell drugs. The government offered Facebook records reflecting this conversation. After that, Prieto would go to the Madrids' Big Valley trailer park approximately every other day to get meth from the defendants. Though Prieto himself was a heavy meth user, he primarily "distribute[d]" the meth that he bought throughout Pecos, Texas. He would purchase the meth from the defendants on a "front," meaning that he would take the drugs without paying, then repay the defendants with the proceeds of his subsequent sales. When he would repay the front, he would give the money either to Pedro or Elizar Madrid. He started out buying only quarter ounces,

2

but later began to buy full ounces at a time—a distribution amount according to the government's witness DEA Agent Hutchison.

Prieto testified that when he would go to the Big Valley property, Elizar Madrid had guns with him "[m]ostly all the time," and Pedro Madrid had a gun "24/7." He described specific guns that each defendant carried. The defendants typically stashed their weapons under the bed in "trailer 3" of the Big Valley property,[1] the trailer out of which they always fronted meth to Prieto. Both Madrids had pictures on Facebook of themselves brandishing semiautomatic handguns, an assault rifle, and a shotgun. A search of the Big Valley property turned up a semiautomatic handgun and an assault rifle in trailer 3, and distribution amounts of cocaine, heroin, and meth in a nearby shed. When Pedro Madrid was arrested, he was a passenger in a vehicle where officers found three handguns and a sawed-off shotgun.

The defendants were tried together, and the jury convicted them both on all counts. All issues on appeal were preserved in the district court. They timely appealed.

## II.

We begin with Elizar Madrid's contention that his convictions should be overturned because the government withheld exculpatory evidence from him. Under the rule established by *Brady v. Maryland*,[2] prosecutors have a constitutional duty to disclose exculpatory and impeachment evidence to criminal defendants even absent a request.[3] There are three elements of a *Brady* violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have

---

[1] Here, we adopt the numbered labels of each trailer on the government's exhibit 6, a diagram of the defendants' trailer park.

[2] 373 U.S. 83 (1963).

[3] *Strickler v. Greene*, 527 U.S. 263, 280 (1999).

3

No. 15-51146

been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."[4] This court reviews alleged *Brady* violations *de novo*.[5]

The *Brady* violation that Madrid alleges was the government's late disclosure of the fact that Prieto, the government's key witness, had previously been arrested for possession of meth and cooperated with Homeland Security as a confidential informant as a result. Defense counsel learned this information on the first morning of trial during HSI Agent Carl's testimony. Madrid used the information during his cross-examination of Prieto and closing argument. The government acknowledges that its late disclosure of this information was "suppression" of impeachment evidence within the meaning of the first two *Brady* elements. However, it argues that Madrid was not prejudiced at trial because it promptly corrected its oversight. Madrid contends that he was prejudiced by the late disclosure because he may have planned his trial strategy differently and may have used the information in his opening statement.

We find that the government's late disclosure of the impeachment evidence did not prejudice Madrid. Madrid "received the material in time to put it to effective use at trial"[6] by cross-examining Prieto about the prior arrest and cooperation with Homeland Security and then using the information in his closing argument. We are not persuaded that counsel would have done anything differently if the information were disclosed earlier; Madrid deferred his opening statement at the beginning of trial, then waived opening altogether at the start of his case-in-chief (when he had the information). It is not clear that he would have chosen to present an opening statement if he had the information prior to trial or that doing so would have been helpful to him. This

---

[4] *Id.* at 281-82.

[5] *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006).

[6] *United States v. McKinney*, 758 F.2d 1036, 1050 (5th Cir. 1985).

No. 15-51146

demonstrates that Madrid suffered no prejudice as a result of the government's late disclosure. Therefore, we reject Elizar Madrid's *Brady* argument.

## III.

We turn to the defendants' challenges to the sufficiency of the government's trial evidence. Both defendants challenge their convictions for conspiracy to possess controlled substances with intent to distribute and possession of firearms in furtherance of that drug crime. Pedro Madrid alone challenges his conviction for felon in possession of a firearm.

This court reviews the denial of a motion for judgment of acquittal *de novo*.[7] If the evidence presented at trial, viewed in the light most favorable to the government, was sufficient to allow a reasonable jury to find all of the essential elements beyond a reasonable doubt, then the conviction must be affirmed.[8]

## A.

Both defendants argue that the government presented insufficient evidence to support their convictions for conspiracy to possess controlled substances with intent to distribute. To prove conspiracy to possess with intent to distribute, the government must establish three elements: "(1) the existence of an agreement between two or more persons to violate narcotics laws, (2) knowledge of the conspiracy and intent to join it, and (3) voluntary participation in the conspiracy."[9]

Both defendants devote their entire argument to negating a conspiracy with Prieto, who was initially their co-defendant, but testified against them hoping for leniency. They ignore that the jury could have found them to have

---

[7] *United States v. Olguin*, 643 F.3d 384, 393 (5th Cir. 2011).

[8] *United States v. Romans*, 823 F.3d 299, 311 (5th Cir. 2016).

[9] *United States v. Nieto*, 721 F.3d 357, 367 (5th Cir. 2013) (quoting *United States v. Turner*, 319 F.3d 716, 721 (5th Cir. 2003)).

conspired *with each other*, a conclusion that would support a guilty finding, as the government notes. The evidence supports that conclusion: the defendants are brothers who worked together, routinely selling jointly from the same location. Tools associated with drug distribution were found in Pedro Madrid's truck at the time of his arrest. Elizar Madrid continued to try to distribute drugs after his brother was arrested. That the jury could have rationally found them to have conspired with each other is an independent reason to reject both of their sufficiency challenges to this conviction.

Even so, their argument that they did not conspire with Prieto fails as well. Both defendants contend that a mere buyer–seller relationship is insufficient to establish conspiracy to possess with intent to distribute, and they are correct.[10] However, the government's evidence here showed that both defendants had more than a mere buyer–seller relationship with Prieto; they had a supplier–dealer relationship. Prieto described himself as a "drug-dealer." Though he was a user himself, he would buy meth from the defendants on a "front," resell it, then repay the defendants the proceeds. The first contact that Prieto ever had with the defendants was a Facebook message in which Prieto said that he needed to make money and meth was selling well. When Prieto would get meth from the defendants, he would get it in ounce quantities, which is a distribution amount. Prieto would resell the meth in Pecos, Texas. After a search of Prieto's car resulted in the confiscation of an ounce of meth, Pedro Madrid went to Prieto's home with a gun and demanded payment for that ounce. This court has found the fronting of drugs to establish more than a buyer–seller relationship.[11] Moreover, the fact that Prieto purchased from the

---

[10] *United States v. Maseratti*, 1 F.3d 330, 336 (5th Cir. 1993) ("[A] buyer-seller relationship, without more, will not prove a conspiracy." (citing *United States v. Hughes*, 817 F.2d 268, 273 (5th Cir. 1987))).

[11] *United States v. Thomas*, 690 F.3d 358, 367 (5th Cir. 2012).

defendants *every other day* surely put the defendants on notice that Prieto was doing more than using the drugs personally.

All of their stray arguments fail as well. Elizar Madrid points out that Prieto was an unreliable witness because he was a drug user and was dishonest with investigators. But this court does not weigh evidence or credibility on sufficiency review.[12] Arguments about what investigators did incorrectly or could have done better miss the point because they do not negate the evidence that the jury heard from which it could have inferred an agreement to possess with intent to distribute. The alternate narrative that Elizar Madrid advances in his brief: that his relationship with Prieto was limited to selling him chrome rims, was rejected by the jury by its guilty finding. Remaining arguments, such as the possibility that Prieto planted the drugs recovered in the search, are speculative.

In sum, sufficient evidence supports both defendants' convictions for conspiracy to possess controlled substances with intent to distribute.

**B.**

Both defendants also challenge their convictions for possessing firearms in furtherance of a drug crime. These charges are predicated on the drug crime discussed above: conspiracy to possess with intent to distribute. Both defendants' only argument on this point is that if we reverse their convictions for the underlying drug crime, we must also reverse their convictions for possessing firearms in furtherance of it. Perhaps, but for the reasons discussed, we reject the defendants' challenge to the underlying drug crime, so we reject this challenge as well.

---

[12] *United States v. Tovar*, 719 F.3d 376, 388 (5th Cir. 2013).

No. 15-51146

## C.

Finally, Pedro Madrid contends that the government presented insufficient evidence to support either of his convictions for felon in possession of a firearm. Madrid was charged with two counts of this crime: Count Five for December 5th and Count Seven for February 7th.

To establish felon in possession of a firearm, the government must show "(1) that the defendant previously had been convicted of a felony; (2) that he possessed a firearm; and (3) that the firearm traveled in or affected interstate commerce."[13] For both counts, Madrid does not dispute the convicted-felon or interstate-commerce elements, but disputes that he possessed the charged firearms. "[P]ossession can be established by (1) actual, physical possession of the firearm, (2) sole control and occupancy of a place where a firearm is found, or (3) joint occupancy of a place where a firearm is found, combined with some evidence of the defendant's access to and knowledge of the firearm."[14] When a single count in an indictment charges possession of multiple firearms, the evidence need only be sufficient as to possession of one of the firearms charged to sustain the conviction.[15]

*Count Five – December 5th Possession*

Count Five of the indictment charges Pedro Madrid with possessing "a Springfield .40 caliber semiautomatic handgun . . . and a Windham Weaponry .223 caliber semiautomatic assault rifle" on or about December 5, 2014. These were the weapons discovered in the search of the Big Valley property. The jury convicted.

Madrid's conviction under Count Five can be affirmed either under an actual-possession theory or constructive-possession theory. The government

---

[13] *United States v. Guidry*, 406 F.3d 314, 318 (5th Cir. 2005).

[14] *United States v. Anderson*, 559 F.3d 348, 353 (5th Cir.2009).

[15] *See United States v. Fields*, 72 F.3d 1200, 1212 (5th Cir. 1996).

presented evidence to the jury that Madrid actually possessed the weapons charged. Prieto testified that Madrid carried a handgun "24/7" and that Madrid showed him an assault rifle in trailer 3 (where the charged assault rifle was discovered). A reasonable jury could have found that Madrid actually possessed either of the weapons discovered in trailer 3 based on that testimony.

Madrid's conviction on Count Five is also sustainable on a constructive-possession theory. Prieto testified that he had meth fronted to him out of trailer 3 roughly every two days and frequently saw the brothers in trailer 3—facts from which the jury could have inferred that Madrid had at least joint control over trailer 3 where the weapons were found. Prieto testified that he saw Pedro Madrid store drugs under the bed in trailer 3, where the handgun was found, so the jury could have inferred that he was aware of it. Madrid was also likely aware of the assault rifle, as he is pictured on Facebook standing next to his brother, who is holding it.

Madrid's arguments against the sufficiency of the government's evidence are unavailing. He argues that the government cannot establish the "temporal limitation" in the indictment. But the date in the indictment, December 5, 2014, was the date of the search that revealed the weapons, and is not an essential element of the crime.[16] Prieto observed Madrid possessing the firearms in question in the two-and-a-half months leading up to the day of the search referenced in the indictment. Moreover, a Facebook photo uploaded eight days before the search shows Madrid holding a handgun. The jury could have reasonably inferred that the photo was taken shortly before it was uploaded, and that the handgun in Madrid's hand in the photo was the same

---

[16] *United States v. Girod*, 646 F.3d 304, 316 (5th Cir. 2011) ("In this Circuit, 'an allegation as to the time of the offense is not an essential element of the offense charged in the indictment and, "within reasonable limits, proof of any date before the return of the indictment and within the statute of limitations is sufficient."'" (quoting *Russell v. United States*, 429 F.2d 237, 238 (5th Cir. 1970))).

one that Prieto testified he always carried. Madrid further argues that his brother was the one who had control over the weapons in trailer 3. But "[constructive] possession may be joint, in that two or more persons can share [a firearm]."[17]

We find the trial evidence sufficient to support Madrid's conviction under Count Five of the indictment.

*Count Seven – February 7th*

Count Seven of the indictment charges Pedro Madrid with possessing "a Ruger Model P89DC 9mm semiautomatic handgun . . . ; a Jiminez Arms Model J.A. Nin 9mm semiautomatic handgun . . . ; a KelTec Model PF9 9mm semiautomatic handgun . . . and a Winchester 12 gauge shotgun" on or about February 7, 2015. These were the weapons discovered in the truck that Madrid was riding in when he was arrested. The jury convicted.

At the time of Madrid's arrest, all of the weapons charged in Count Seven of the indictment were found in the truck with him, covered by a jacket. Madrid was the passenger at the time of the arrest, but the driver testified that Madrid had picked him up in the truck, then they swapped at Madrid's request. This testimony gives rise to the inference that the weapons found the truck belonged to Madrid. Moreover, Madrid is featured in two different Facebook pictures holding a shotgun like the one recovered from the truck.

We also find the evidence sufficient to support Madrid's conviction under Count Seven of the indictment.

**IV.**

For the reasons described, the trial court's judgments of conviction of both defendants are affirmed as to all counts.

---

[17] *United States v. Virciglio*, 441 F.2d 1295, 1298 (5th Cir. 1971).